OPINION
{¶ 1} The State filed this action on March 15, 2006, alleging violations of the Gambling Act, R.C. 2915.01 et seq., and the Charitable Organizations Act, R.C. 1716.01 et seq., based on the involvement of appellees Reece Powers, Janice Powers, R J Partnership, Ltd. and others (collectively the "Powers defendants") in charitable-gambling activity. Along with its complaint, the State moved for a temporary restraining order and a preliminary injunction. The trial court issued a restraining order the same day and enjoined the Powers defendants from soliciting for charitable-gambling events and using their retail and web-based business for purposes of conducting and advertising Monte Carlo nights and Texas Hold `em poker tournaments.
 {¶ 2} The trial court held a preliminary injunction hearing on April 6-7, 2006. After taking evidence and reviewing post-hearing briefs, it declined to grant preliminary injunctive relief. The evidence presented at the hearing demonstrated that Reece and Janice Powers run a retail and web-based business, R J Partnership, Ltd., that rents and sells an assortment of gambling equipment. They rented some of this equipment, including poker tables, chips, and related accessories, to two charitable organizations, A Learning Place, Inc., and St. Peter's Parish, for a Monte Carlo night and a Texas Hold `em poker tournament. The Powers defendants assisted these organizations with various activities, including advertising their gambling events, signing up participants, and operating the actual events.
 {¶ 3} With regard to the alleged Gambling Act violations, the trial court found little likelihood of success on the merits and also found that balancing the equities did not support injunctive relief. Based on the evidence presented, the trial court determined *Page 3 
that the Powers defendants likely did not violate the Gambling Act because they were not compensated for promoting and helping the organizations operate their gambling activities. As for the alleged Charitable Organizations Act violations, the trial court found that the statute's requirements primarily applied to "professional solicitors" rather than volunteers. Based on its conclusion that the Powers defendants were not compensated for soliciting gambling on behalf of charities, and therefore were volunteers, the trial court found that the State had not established a violation of the statute.
 {¶ 4} The State advances four assignments of error on appeal. Its first assignment of error states:
 {¶ 5} "THE TRIAL COURT ERRED BY FAILING TO ADDRESS THE EXISTENCE OF THE REECE DEFENDANTS' FIDUCIARY DUTIES PURSUANT TO R.C. CHAPTER 1716, R.C. CHAPTER 109, AND THE COMMON LAW AS WELL AS THE FACTS DEMONSTRATING BREACH OF THOSE FIDUCIARY DUTIES."
 {¶ 6} In this assignment of error, the State contends Reece Powers was acting as a fiduciary under the Charitable Organizations Act, as well as R.C. 109.23, which pertains to charitable trusts, and the common law. The State further asserts that Powers breached his fiduciary duties to A Learning Place and St. Peter's Parish by (1) failing to inform them that he had been convicted in federal court for gambling-related activity, (2) charging the charities excessive fees, allowing outrageous expenses, and generally wasting their money, and (3) treating the proceeds from their charitable-gambling events as his own, borrowing the money without permission, and even misappropriating charitable funds to purchase personal items. The State contends the trial court erred in *Page 4 
failing to address its argument that Reece Powers' breach of his fiduciary duties warranted the issuance of a preliminary injunction.
 {¶ 7} Upon review, we first note that the State's motion for a preliminary injunction did not assert that Reece Powers was a fiduciary under R.C. 109.23 or the common law. Therefore, the trial court did not err in failing to address the existence, or breach, of fiduciary duties arising under R.C. 109.23 or the common law. With regard to the Charitable Organizations Act, most of its requirements pertain to a "professional solicitor," which is defined as "any person who, for compensation, performs on behalf of or for the benefit of a charitable organization any service in connection with which contributions are or will be solicited in this state * * *." R.C. 1716.01(J).
 {¶ 8} In its post-hearing brief, the State argued that the Powers defendants were "professional solicitors" and that they violated several requirements of the Charitable Organizations Act pertaining exclusively to such individuals.[1] The State also cited R.C. 1716.17 for the proposition that "professional solicitors are fiduciaries and hold fiduciary duties with respect to all solicitation proceeds[.]" The State then asserted that "Reece Powers has not maintained all required records and has breached numerous fiduciary duties regarding charitable solicitation proceeds including commingling assets and self-dealing." The State's post-hearing memorandum contained no other reference to a *Page 5 
breach of fiduciary duty. As set forth above, the trial court found, inter alia, that the requirements of the Charitable Organizations Act did not apply to the Powers defendants because they were not compensated for their solicitation work on behalf of the charities and, therefore, were not professional solicitors.
 {¶ 9} On appeal, however, the State notes that the fiduciary language of R.C. 1716.17 actually applies to anyone who solicits on behalf of a charity, regardless of whether that person is a "professional solicitor." It states: "Every person who solicits, collects, or expends contributions on behalf of a charitable organization or for a charitable purpose, or who conducts a charitable sales promotion * * * shall be considered a fiduciary and as acting in a fiduciary capacity." Based on R.C. 1716.17, the State insists that Reece Powers was acting as a fiduciary when he assisted the charities with their gambling events, regardless of whether he was a professional solicitor. The State also contends he breached his fiduciary duties under R.C. 1716.17 in the three ways set forth above, thereby warranting the issuance of a preliminary injunction.
 {¶ 10} We find the State's argument to be unpersuasive. We do not dispute that R.C. 1716.17 applies to "every person" who solicits on behalf of a charity, without regard to whether the person is a "professional solicitor." Nor do we dispute the State's claim that Reece Powers engaged in "solicitation" under the Charitable Organizations Act. As the trial court recognized, a "solicitation" is a request for money on behalf of a charity. R.C. 1716.01(K). It includes any oral or written request for money, including advertisements, and selling or offering to sell any "chance" on behalf of a charity. Id. *Page 6 
The trial court properly held that the Powers defendants solicited under the statute by assisting with advertising gambling events, posting signs, and selling poker tournament "registrations, re-buys, and live action chips" on behalf of the charities. Because Reece Powers engaged in solicitation activity, he was a fiduciary under R.C. 1716.17.
 {¶ 11} Despite the foregoing conclusion, we reject the State's assertion that a breach of Reece Powers' fiduciary duties warranted preliminary injunctive relief. While the trial court did not explicitly state that no breach of fiduciary duty occurred, it held that the Powers defendants' accounting to the charities was accurate, that the charities themselves were pleased with the events, which proved to be quite profitable for them, and that Reece Powers did not "abuse" the charities in any way. These findings effectively precluded the issuance of a preliminary injunction on the basis of a breach of fiduciary duty.
 {¶ 12} As for the State's specific arguments on appeal, we note that it never raised Reece Powers' alleged failure to disclose a prior conviction as an issue below. Therefore, the trial court did not err in failing to find a breach of fiduciary duty on that basis. With regard to charging outrageous and excessive expenses, the record fails to support the claim. The State alleges that Reece Powers improperly increased the rental charge on his poker tables from $50 per table to $150 per table, thereby breaching his fiduciary duty to St. Peters Parish. At the preliminary injunction hearing, however, Powers provided a reasonable explanation for the increased charge. He explained that for some smaller events he charged a flat fee of either $50 or $60 per table rented depending on the number rented, regardless of whether the organization ended up *Page 7 
needing or using all of the tables provided. On the other hand, for events like Texas Hold `em poker tournaments, where walk-in registrations tend to make attendance unpredictable, he delivers an ample supply of tables but charges only for the tables actually used each day. Because the unused tables remain tied up, however, and because he bears the risk of delivering numerous tables for which he will not receive payment, he charges the higher rate of $150 per table. The Reece defendants presented calculations at the hearing demonstrating that, in the case of St. Peters Parish, the total table-rental fee would have been roughly the same under either pricing scheme. Moreover, the State presented no evidence to show that a $150 per table rental fee is per se excessive.
 {¶ 13} The State also complains that Reece Powers' son charged an exorbitant fee of $7,596.76 for printing flyers advertising the St. Peters Parish poker tournament. We note, however, that the flyers are professional-looking, four-color prints on glossy paper. They were mailed to prospective tournament participants using a mailing list maintained by the Powers defendants. The State has not informed us how many of the flyers were printed. Nor has it provided any comparable pricing information from which we could ascertain that the fee charged was excessive.
 {¶ 14} The State next generally complains about Reece Powers setting the poker tournament registration fees and determining how much would be spent by the charities for expenses. Once again, however, nothing in the record reveals that the registration fees charged were too low or that the various expenses incurred were too high. Representatives of the charities were the ultimate decision-makers responsible for the *Page 8 
planning, organization, and conduct of the events. Moreover, representatives of the charities testified that they were pleased with the results, and the charities themselves made substantial profits from the events. The record fully supports the trial court's finding that there is no evidence of Reece Powers abusing the charities in any way. Therefore, the trial court did not err in failing to find a breach of fiduciary duty on that basis.
 {¶ 15} Finally, with regard to the Powers defendants' alleged personal use and misappropriation of charitable funds, the trial court found that the charities received an accurate accounting of all funds. The trial court characterized the State's attempt to prove otherwise as "overreaching" based largely on "speculation, invention, and a refusal to acknowledge facts favorable to the defendants." A review of the record supports the trial court's conclusion that the State failed to establish any misappropriation of funds.
 {¶ 16} On appeal, the State contends the Powers defendants purchased personal items from Tiffany's Jewelry, Kane's Furniture, and Pottery Barn Kids using charitable funds in the form of poker tournament pre-registrations that had been deposited into their Pay Pal account. These purchases cost less than $3,500 combined. The Pay Pal account was used primarily by the Powers defendants' retail business so customers could purchase gambling equipment on line. For some period of time, charitable poker tournament pre-registration money was deposited into the account along with the proceeds from sales by the Reece defendants' on-line business. Reece Powers then opened a separate charitable escrow account and transferred $2,150.72 from *Page 9 
tournament pre-registrations into it. He also wrote a $13,950 check to the charitable escrow account for additional sign-up fees. At the preliminary injunction hearing, the State presented evidence that from October 14, 2003 through April 25, 2005, a total of $32,568.23 was deposited in the Pay Pal account and $28,628.91 was withdrawn from it. At the hearing, investigator Mark Graves admitted his inability to determine that any charitable funds were used to purchase the personal items mentioned above. The trial court reached the same conclusion, observing that Graves apparently had "assumed any deposit made to the Pay Pal account for Mr. Powers' business was an under-the-table payment from a charity to Mr. Powers." Based on our own review of the testimony and the records, we likewise find no evidence that the Powers defendants used charity money to purchase items from Tiffany's Jewelry, Kane's Furniture, or Pottery Barn Kids.
 {¶ 17} On the other hand, the evidence establishes that, while acting in the presence of at least one government investigator, Reece Powers did borrow $1500 from the proceeds of the St. Peters Parish Texas Hold `em poker tournament and loan the money to his son to get his car out of the shop. As instructed by Powers, his son promptly returned the money by issuing a check to the charity for $1500. The trial court did not address whether this brief use of $1500 for personal purposes, possibly without the Parish's knowledge, constituted a breach of fiduciary duty. Even assuming arguendo that it did, it did not warrant the sweeping injunctive relief requested by the State, particularly given that it was a one-time event and resulted in no harm to the charity.[2] *Page 10 
Accordingly, we overrule the State's first assignment of error.
 {¶ 18} The State's second assignment of error is as follows:
 {¶ 19} "THE TRIAL COURT ERRED BY APPLYING THE CLEAR AND CONVINCING BURDEN OF PROOF DURING ITS APPLICATION OF ACKERMAN v. TRI-CITY GERIATRIC (1978), 55 OHIO ST.2D 51."
 {¶ 20} The State contends the trial court erred by requiring it to establish a violation of R.C. Chapter 1716 by clear and convincing evidence. According to the State, the trial court should have applied the preponderance-of-the-evidence standard.
 {¶ 21} To obtain the equitable remedy of a preliminary injunction, a party must show, by clear and convincing evidence: (1) a substantial likelihood of success on the merits, (2) the existence of irreparable harm if an injunction is not issued, (3) that third-parties will not be unjustifiably harmed if an injunction is issued, and (4) that granting an injunction will serve the public interest. Procter Gamble Co. v. Stoneham (2000), 140 Ohio App.3d 260, 267-268. But when a statute grants a specific injunctive remedy, "the traditional concepts for the issuance of equity injunctions do not apply[.]" Ackerman v. Tri-City Geriatric Health Care, Inc. (1978), 55 Ohio St.2d 51, 56. In the case of a statutory injunction, the moving party need only satisfy the statutory conditions. Id. at 57.
 {¶ 22} The present case involves a statutory injunction rather than an equitable injunction. The Charitable Organizations Act specifically authorizes injunctive relief when a violation of the statute is established. See R.C. 1716.16(B) ("Upon a finding that any *Page 11 
person has engaged or is engaging in any act or practice in violation of this chapter or any rule adopted under this chapter, a court may make any necessary order or enter a judgment including, but not limited to, an injunction * * *. In seeking injunctive relief, the attorney general shall not be required to establish irreparable harm but only shall establish a violation of a provision of this chapter or a rule adopted under this chapter or that the requested order promotes the public interest."). Therefore, the rules governing the issuance of equitable injunctions — which include the need for clear and convincing evidence — do not apply. Stoneham, 140 Ohio App.3d at 267-268.
 {¶ 23} In opposition to the foregoing conclusion, the Reece defendants cite State ex rel. Jones v. Hamilton Cty. Bd. of Commrs. (1997),124 Ohio App.3d 184, for the proposition that the rule of Ackerman applies only when a statute authorizes injunctive relief and contains guidelines for the issuance of an injunction. The Reece defendants' reliance on Jones is unpersuasive. In Doran v. Northmont Bd. of Edn.,153 Ohio App.3d 499, 505, 2003-Ohio-4084, we held that the Ackerman rule applies where a statute provides for the issuance of an injunction upon a finding that its requirements have been violated. Here the Charitable Organizations Act authorizes injunctive relief "[u]pon a finding that any person has engaged or is engaging in any act or practice in violation of" its terms. R.C. 1716.16(B). Therefore, the present case involved a statutory injunction under Ackerman. As a result, the trial court erred in requiring the State to prove a violation of the Charitable Organizations Act by clear and convincing evidence.
 {¶ 24} We note, however, that improper application of a heightened evidentiary burden does not always require a reversal. See, e.g., Schroer v. Schroer, Richland App. *Page 12 
No. 06CA78, 2007-Ohio-4927 (finding that the trial court's misuse of the heightened clear-and-convincing-evidence standard was harmless error); In re Simers, Washington App. No. 06CA30, 2007-Ohio-3232, ?9-10 (recognizing that the improper placement of a heightened evidentiary burden on a movant may constitute harmless error); see also In re Phillips (March 13, 1997), Marion App. Nos. 9-96-44, 9-96-45, and 9-96-46 (holding that the trial court's improper use of a lower standard of proof was harmless error where the evidence plainly demonstrated that the movant had proven its case by the requisite clear and convincing evidence).
 {¶ 25} Based on our review of the record, we find that the trial court's use of the clear-and-convincing-evidence standard was harmless error. Although the trial court incorrectly applied a heightened evidentiary burden, the evidence with respect to what the Reece defendants did was largely undisputed. As a factual matter, the parties agree that the Reece defendants rented gambling-related equipment to the charities, assisted with the promotion of gambling events through advertising and signing up participants, and provided hands-on help with the day-to-day operation of the events. For purposes of the State's motion for a preliminary injunction and this appeal, the real issue in the case is whether any of that conduct violated the Charitable Organizations Act. The State argued that the Reece defendants' conduct violated numerous provisions of the statute because they were compensated for their solicitation work on behalf of the charities and, therefore, were "professional solicitors." Determining whether the Reece defendants were compensated for their work, within the meaning of the statute, involves primarily an application of law to facts. The outcome of the case turns not so much on determining *Page 13 
what the Reece defendants did as it does on determining whether what they did violated the law. We are firmly convinced that the outcome below would have been the same if the trial court had required the State to establish a violation of the Charitable Organizations Act by the preponderance of the evidence rather than by clear and convincing evidence.[3] Therefore, the trial court's misuse of the heightened evidentiary burden constituted harmless error. The second assignment of error is overruled.
 {¶ 26} The State's third assignment of error states:
 {¶ 27} "THE TRIAL COURT ERRED BY APPLYING THE CHARITABLE GAMING EXCEPTION PURSUANT TO R.C. 2915.02(D)(1) WHEN THE EXCEPTION DID NOT APPLY, AND THE REECE DEFENDANTS DID NOT PROVE BY A PREPONDERANCE OF THE EVIDENCE THAT THE EXCEPTION APPLIED."
 {¶ 28} The Gambling Act generally provides that "[n]o person shall * * * [establish, promote, or operate or knowingly engage in conduct that facilitates any game of chance conducted for profit or any scheme of chance." R.C. 2915.02(A)(2). The Powers defendants do not appear to dispute that they promoted, operated, or facilitated games of chance conducted for profit when they helped advertise and run the Monte Carlo night and poker tournament at issue. Notably, however, the Gambling Act includes a charitable-gaming exception that is available as an affirmative defense if certain *Page 14 
statutory requirements are met. The trial court applied the exception to find that the Powers defendants had not violated the Gambling Act.
 {¶ 29} On appeal, the State contends the trial court erred in applying the charitable-gaming exception because the Powers defendants failed to prove compliance with its requirements. In fact, the State argues that the evidence presented at the preliminary injunction hearing affirmatively demonstrated that the exception did not apply.
 {¶ 30} Upon review, we need not decide whether the trial court erred in relying on the charitable-gaming exception to find no violation of the Gambling Act. Although the State's complaint in this case alleged violations of the Gambling Act and the Charitable Organizations Act, our review of the State's combined motion for a temporary restraining order/preliminary injunction reveals that it never requested preliminary injunctive relief under the Gambling Act. Instead, the State sought a temporary restraining order under the Gambling Act and moved for preliminary injunctive relief only under the Charitable Organizations Act. Likewise, in its post-hearing memorandum in support of preliminary injunctive relief, the State addressed only its right to an injunction under the Charitable Organizations Act. Because the State never moved for a preliminary injunction under the Gambling Act, we cannot say the trial court erred in failing to grant such relief, regardless of the charitable-gaming exception's applicability.[4] Accordingly, we overrule *Page 15 
the State's third assignment of error.
 {¶ 31} The State's fourth assignment of error is as follows:
 {¶ 32} "THE TRIAL COURT ERRED BY FINDING THAT THE REECE DEFENDANTS WERE NOT COMPENSATED."
 {¶ 33} This assignment of error challenges the trial court's determination that the Powers defendants were not compensated for their work on behalf of the charities. In light of our finding above that the State did not seek preliminary injunctive relief under the Gambling Act, we will address this assignment of error only as it relates to compensation for the Powers defendants' solicitation activity the Charitable Organizations Act.
 {¶ 34} The essence of the State's argument is that the Powers defendants received improper compensation in three ways: (1) the charities purchased a "package deal" that included poker tables/equipment and the Powers defendants' services at their events, (2) the Powers defendants used the charities' money to make personal purchases through their Pay Pal account, and (3) the Powers defendants received the benefit of increased patronage as a result of their activities on behalf of the charities.
 {¶ 35} The trial court rejected the first branch of the State's argument, concluding *Page 16 
that the appellees charged strictly for their equipment and not their services. The trial court also found insufficient evidence to support the State's claim that the Powers defendants used charity money to make personal purchases through Pay Pal. The record supports the trial court's conclusion on these issues. Although the State argued that the Powers defendants charged an excessive fee for table rentals as hidden compensation for their personal services, Reece Powers provided a reasonable explanation for the rental fee charged. The Powers defendants also provided evidence that the rental price for their tables and other equipment would be the same regardless of whether they assisted in the operation of charitable-gaming events. As we explained above, the State also failed to establish that the Powers defendants used charity money from a Pay Pal account to purchase personal items from Tiffany's Jewelry, Kane's Furniture, and Pottery Barn Kids. Finally, with regard to increased patronage, the trial court correctly found that receiving such a benefit does not constitute "compensation." Freedom Road Foundation v. Ohio Dept. Of Liquor Control, 80 Ohio St.3d 202, 206,1997-Ohio-346. Accordingly, we overrule the State's fourth assignment of error.
 {¶ 36} The judgment of the Montgomery County Common Pleas Court is affirmed.
WOLFF, P.J., and DONOVAN, J., concur.
[1] The Charitable Organizations Act requires professional solicitors to register with the Attorney General, file a bond, file certain paperwork prior to engaging in solicitation, file financial reports, collect contributions solely in the name of the charitable organization, deposit the contributions promptly and in a certain manner, give the charitable organization sole control over withdrawals, and maintain certain records. See R.C. 1716.07.
[2] In this regard, we note that R.C. 1716.16(B) does not mandate the granting of an injunction upon a finding of a statutory violation. Instead, it provides that "a court may make any necessary order," including the issuance of an injunction.
[3] In its ruling, the trial court observed that whether the Reece defendants were "compensated" for their work on behalf of the charities was a "close call." The trial court's analysis reveals, however, that this observation stemmed from some uncertainty about the meaning of "compensation" under the statute and not from any factual uncertainty about what the Powers defendants had done.
[4] During oral argument, the State suggested that the issue of preliminary injunctive relief under the Gambling Act was properly before us because the Powers defendants and the trial court had addressed it. This does not alter the fact that the State never moved for a preliminary injunction under the Gambling Act. The fact that the Powers defendants and the trial court addressed a non-existent issue does not provide a basis for awarding the State injunctive relief it never sought. Moreover, even if the State is correct about alleged deficiencies in the Powers defendants' showing under the charitable-gaming exception, it would be unfair to grant the State preliminary injunctive relief under a statute that its motion failed to invoke. If the State believes the trial court erred in applying the exception, it remains free, of course, to raise its arguments at the upcoming trial on the merits of its complaint. *Page 1