[Cite as *State ex rel. DeWine v. 333 Joseph, L.L.C.*, 2014-Ohio-5090.]

## IN THE COURT OF APPEALS OF OHIO
### THIRD APPELLATE DISTRICT
### MARION COUNTY

STATE OF OHIO EX REL.
MICHAEL DEWINE,
OHIO ATTORNEY GENERAL,

       PLAINTIFF-APPELLEE,               CASE NO. 9-13-71

       v.

333 JOSEPH, LLC, ET AL.,

       DEFENDANTS-APPELLANTS,      O P I N I O N
       -and-

ROBERT CENDOL, ET AL.,

       DEFENDANTS-APPELLEES.

Appeal from Marion County Common Pleas Court
Trial Court No. 13-CV-0453

Judgment Reversed and Cause Remanded

Date of Decision: November 17, 2014

APPEARANCES:

    *Colin G. Skinner* for Appellants

    *Clint R. White* for Appellee, Michael DeWine, Ohio Attorney General

**WILLAMOWSKI, P.J.**

{¶1} Defendants-appellants, a company known as 333 Joseph, LLC and its member, Stanley Rosenfeld (collectively referred to as "333 Joseph"), bring this appeal from the judgment of the Marion County Court of Common Pleas granting a preliminary injunction[1] in favor of Plaintiff-appellee, State of Ohio ex rel. Michael DeWine, Ohio Attorney General ("the State"). For the reasons that follow, we reverse the trial court's judgment.

{¶2} The facts relevant to this appeal are as follows. On July 24, 2013, the State filed a Complaint for Injunctive Relief and Civil Penalties with the Marion County Court of Common Pleas ("the Complaint"). (R. at 2.) The Complaint alleged that 333 Joseph conducted illegal demolition activities at a construction site at 333 Joseph Street in Marion, Ohio. (*Id.*) The eight counts of the Complaint included: air nuisance, statutory nuisance, failure to notify the Ohio Environmental Protection Agency ("Ohio EPA") of a demolition operation, failure to remove asbestos-containing materials, shipping or removing asbestos-containing material without an authorized representative present at the operation, failure to keep all regulated asbestos-containing material adequately wet, failure to properly dispose

---

[1] Although the trial court granted a preliminary injunction, we recognized that due to the nature of the trial court's order, which would result in a permanent solution (i.e., clean up and removal of debris from the site), 333 Joseph would not have an adequate remedy after the conclusion of the proceedings. Therefore, we issued an order allowing for the immediate appeal of the trial court's preliminary injunction as a final appealable order. (*See* J. Entry Feb. 14, 2014.)

of asbestos-containing waste material, and failure to comply with the final orders of the Director of the Ohio EPA. (*Id.*)

{**¶3**} Count Eight of the Complaint specifically alleged that on October 31, 2012, the Director of the Ohio EPA issued Director's Final Findings and Orders ("Director's Orders") pursuant to R.C. 3704.03(R) (authorizing the Ohio EPA Director to "issue, modify, or revoke orders requiring abatement of or prohibiting emissions that violate applicable emission standards or other requirements of this chapter and rules adopted thereunder, or requiring emission control devices or measures in order to comply with applicable emission standards or other requirements of this chapter and rules adopted thereunder"). The Director's Orders allegedly required 333 Joseph to "remove all regulated asbestos containing material from the Joseph Street site, prevent public access to the site during removal through use of temporary fencing, and properly dispose of all regulated asbestos containing material in a properly licensed landfill by December 31, 2012." (*Id.*) The State claimed that 333 Joseph had failed to comply with the Director's Orders, violating R.C. 3704.05(G) (prohibiting violation of an order of the Ohio EPA director), and entitling the State to injunctive relief under R.C. 3704.06(B) (authorizing the attorney general to "bring an action for an injunction, a civil penalty, or any other appropriate proceedings in any court of competent jurisdiction against any person violating or threatening to violate section 3704.05 or 3704.16 of the Revised Code").

{¶4} Together with the Complaint, the State filed a motion for a preliminary injunction, pursuant to R.C. 3704.06, 3767.03 ("Abatement of nuisance"), and Civ.R. 64 ("Injunctions"). (R. at 3.) In this motion, the State alleged that 333 Joseph created and maintained nuisance; "violated statutes and rules designed to protect public health, safety, and the environment"; and "refused to comply with orders from the Director of Ohio EPA to clean up the blighted property at 333 Joseph St." (*Id.*) The State further alleged that 333 Joseph "did not appeal the issuance of the Director's Orders as was its prerogative per R.C. 3745.04." (*Id.*)

{¶5} 333 Joseph filed an answer denying allegations in all counts of the Complaint. It then filed a brief in opposition to the State's motion, arguing that there was no evidence that the construction site posed any risks, that other parties were responsible for any potential violations, that 333 Joseph could not comply with the Director's Orders due to its limited means, and that no exigent circumstances existed to require a preliminary injunction, in place of the "normal litigation process." (R. at 10.) 333 Joseph further alleged that the State must prove its right to the injunction by clear and convincing evidence.

{¶6} The trial court held a hearing on the State's motion. The hearing was largely focused on resolving the issue of whether 333 Joseph was in violation of the Director's Orders, but the trial court also heard arguments and reviewed other evidence of statutory violations that would warrant an injunction under R.C.

3704.06. (*See* Tr. at 5:6-7, 9:19-10:2.) 333 Joseph argued that the Director's Orders did not sufficiently establish violations of the Ohio Administrative Code and that the testimony presented at the hearing did not prove that there was any asbestos on the site or that it was hazardous. (Tr. at 226.) It argued that the site was not dangerous and all the required cleanup procedures were thus, unnecessary and too burdensome. (*Id.*) 333 Joseph further contended that a preliminary injunction was not proper at this point in the proceedings, asking for an opportunity to have a full trial on the merits. (Tr. at 226-228.) 333 Joseph attempted to challenge findings made by the Ohio EPA Director in the Director's Orders, as well as the specificity of the orders, but it did not dispute its failure to appeal the Director's Orders. (*See* Tr. at 7:23-24, 14:16-22, 15:1-5.) 333 Joseph also objected to the admission into evidence of Exhibit 6, which appears to be a photocopy of a certified photocopy of the purported Director's Orders. (*See* Tr. Ex. P-6.) 333 Joseph argued that the document was not properly authenticated. (Tr. at 165.) The trial court admitted Exhibit 6 over 333 Joseph's objections. (Tr. at 167.) The parties also presented arguments concerning the standard of proof applicable to the preliminary injunction action at issue.

{¶7} After the hearing and additional briefing, the trial court determined that the applicable standard of proof was the preponderance of the evidence. The trial court found that this standard was satisfied in this case and issued its judgment entry granting the preliminary injunction. The trial court's findings and

the order of injunction were largely based on the Director's Orders. In particular, the trial court found that the Director of the Ohio EPA "issued an order directed to [333 Joseph]" on October 31, 2012, which ordered certain removal and clean-up activities to "be conducted in full compliance with applicable asbestos regulations and laws (see OAC Chapters 3745-20 and 40 CFR Part 61, Subpart M), * * * no later than December 31, 2012," while precluding public access "with the use of temporary fencing," and the disposal of the asbestos-containing materials "in a properly licensed landfill." (R. at 21, J. Entry at 5.) The trial court further found that 333 Joseph failed to comply with the Director's Orders. (*Id.*) The trial court concluded that as a result of 333 Joseph's failure to comply with the Director's Orders, "[r]egulated asbestos-containing materials remain on the premises." (*Id.*) Therefore, it held that the State "has met its burden to obtain a preliminary injunction against [333 Joseph] for failure to comply with an order issued by the EPA director as well as administrative rules issued by the director." (*Id.* at 7.) Of note, the trial court did not find that the property constituted a nuisance and it found only "minimal evidence that the property constituted a health hazard." (*Id.* at 6.) The preliminary injunction order repeated much of the language of the Director's Orders. (*See id.* at 7-8.)

{¶8} 333 Joseph filed this timely appeal, in which it raises four assignments of error.

**ASSIGNMENT OF ERROR NO. 1**

**The trial court erred as a matter of law in issuing an injunction order that incorporated other documents in contravention of Civil Rule 65.**

**ASSIGNMENT OF ERROR NO. 2**

**The trial court erred as a matter of law in its application of a preponderance [of the] evidence standard to Plaintiff's motion for preliminary injunction.**

**ASSIGNMENT OF ERROR NO. 3**

**The trial court's ruling in determining the presence of asbestos was against the manifest weight of the evidence.**

**ASSIGNMENT OF ERROR NO. 4**

**The trial court erred in admitting the Director's Orders into evidence, and finding that it [sic] had been properly served.**

{¶9} We elect to address the assignments of error out of order.

*Second Assignment of Error—*
*Standard of Proof for Statutory Injunction*

{¶10} In the trial court, 333 Joseph argued that the State must prove the elements necessary for a preliminary injunction by "clear and convincing" evidence. The trial court rejected this assertion and applied the preponderance of the evidence standard to the action, reasoning that a statutory injunction does not require the higher burden of proof.

{¶11} In this case, determination of the proper standard of proof is complicated by the nature of the action, which is an injunction based upon a

- 7 -

violation of a statute, a so-called statutory injunction. Furthermore, while "[t]he purpose of a preliminary injunction is to preserve the status quo of the parties pending a decision on the merits," *Davis v. Widman*, 184 Ohio App.3d 705, 2009-Ohio-5430, 922 N.E.2d 272, ¶ 29 (3d Dist.), here, compliance with the preliminary injunction order results in a permanent solution, thereby allowing the State to avoid a full trial on the merits.

{¶12} Generally, a preliminary injunction will not be granted unless the party seeking injunction proves *by clear and convincing evidence* that (1) there is a substantial likelihood of prevailing on the merits, (2) there is a risk of irreparable injury if the injunction is not granted, (3) the injunction will not unjustifiably harm third parties, and (4) the injunction will serve the public interest. *Davis* at ¶ 29, quoting *Procter & Gamble Co. v. Stoneham*, 140 Ohio App.3d 260, 267, 747 N.E.2d 268 (1st Dist.2000); *accord State ex rel. Dann v. R & J Partnership, Ltd.*, 2d Dist. Montgomery No. 22162, 2007-Ohio-7165, ¶ 21. This exact standard is not followed, however, for statutory injunctions.

> It is established law in Ohio that, when a statute grants a specific injunctive remedy to an individual or to the state, the party requesting the injunction "need not aver and show, as under ordinary rules in equity, that great or irreparable injury is about to be done for which he has no adequate remedy at law * * *."

*Ackerman v. Tri-City Geriatric & Health Care, Inc.*, 55 Ohio St.2d 51, 56, 378 N.E.2d 145 (1978), quoting *Stephan v. Daniels*, 27 Ohio St. 527, 536 (1875); *accord Dann* at ¶ 21, quoting *Ackerman* at 56, 57 ("when a statute grants a specific

injunctive remedy, 'the traditional concepts for the issuance of equity injunctions do not apply [.]' * * * In the case of a statutory injunction, the moving party need only satisfy the statutory conditions."). Because the injunction at issue was based on a statute, R.C. 3704.06, the trial court applied *Ackerman* to this case in place of the traditional injunction rules.

{¶13} Nevertheless, although R.C. 3704.06 gives the trial court "jurisdiction to grant prohibitory and mandatory injunctive relief and to require payment of a civil penalty *upon the showing* that the person has violated this chapter or rules adopted thereunder," the statute does not address the standard of proof required for the "showing" of the violation. (Emphasis added.) R.C. 3704.06(B). Similarly, although the *Ackerman* decision established that certain elements normally required for obtaining injunctive relief need not be satisfied in statutory injunction actions, it did not address the standard of proof for those actions. *Ackerman* thus does not hold that the standard of proof in statutory injunctions is lower than in equitable actions for injunctive relief. In fact, the *Ackerman* court did not need to address the standard of proof because the parties stipulated to the elements of the statute and the statutory injunction was proper based on that stipulation.[2] *See Ackerman* at 58. Accordingly, *Ackerman* does not aid in the resolution of the issue before us.

---

[2] We also note that the *Ackerman* opinion does not specify whether it concerned a preliminary or permanent injunction.

**{¶14}** In deciding that the standard of proof for this action should be the preponderance of the evidence, the trial court relied on a case from the Second District Court of Appeals, where that court held that statutory injunctions should be issued upon proof of a statutory violation by the preponderance of the evidence. *See Dann*, 2d Dist. Montgomery No. 22162, 2007-Ohio-7165, at ¶ 22-25. The *Dann* court did not explain its reasoning for applying the lowered evidentiary burden, other than stating that "the rules governing the issuance of equitable injunctions—which include the need for clear and convincing evidence—do not apply" in statutory injunction actions. *Id.* at ¶ 22.

**{¶15}** In another case, however, the Second District Court of Appeals analyzed the question of what degree of proof is required for a statutory action concerning nuisance abatement, brought under the same Title of the Revised Code as the action before us, "Health—Safety—Morals." *See State, ex rel. Freeman v. Pierce*, 61 Ohio App.3d 663, 573 N.E.2d 747 (2d Dist.1991). There, the court reasoned that since the statute did not specify the standard of proof, common law was the source of authority. *Id.* at 670. It analyzed the common law cases as follows.

> We have held that in order to obtain an injunction, a petitioner must prove his allegations by clear and convincing evidence. Again, *we see no reason why the abatement of nuisances should require a lesser degree of proof than other actions which seek injunctive relief.* Moreover, the elevated burden seems especially appropriate when the defendant faces the potential loss of her real and personal property.

(Emphasis added.) *Id.* at 670, citing *Zavakos v. Zavakos Enterprises, Inc.*, 63 Ohio App.3d 100, 577 N.E.2d 1170 (2d Dist.1989), *Southern Ohio Bank v. Southern Ohio Sav. Ass'n*, 51 Ohio App.2d 67, 366 N.E.2d 296 (1st Dist.1976), *and White v. Long*, 12 Ohio App.2d 136, 231 N.E.2d 337 (1st Dist.1967).

{¶16} We have recently followed *Freeman* and applied the clear and convincing evidence standard of proof in a case involving nuisance abatement. *State ex rel. Waldick v. Howard*, 3d Dist. Allen No. 1-11-33, 2012-Ohio-404. But the trial court in the current case refused to follow *Freeman*, distinguishing it because the action there was brought by a private citizen and because "confiscation of real estate due to criminal activity is significantly different than enforcement of regulatory statutes intended to protect the public's health and safety." (R. at 21, J. Entry at 4.) We do not find the distinctions made by the trial court to be relevant to the issue before us. In *Waldick*, the action was brought by the Allen County Prosecutor, not a private citizen; yet we followed *Freeman*. Furthermore, although the plaintiffs in *Freeman* and *Waldick* sought injunctive relief for violations of criminal statutes, they both filed civil actions, as did the State in the current case. The Sixth District Court of Appeals held, "[s]ince abatement of a nuisance action under R.C. 3767.03 is a civil action, the jury would use the civil standard of clear and convincing evidence to ascertain whether repeated violations have occurred." *State ex rel. Pizza v. Strope*, 6th Dist. Lucas

No. L-88-045, 1989 WL 20263, *9 (Mar. 10, 1989), *rev'd on other grounds,* 54 Ohio St.3d 41, 560 N.E.2d 765 (1990).

**{¶17}** A further review of Ohio cases does not show consensus among Ohio courts. In another case cited by the trial court, the Fourth District Court of Appeals held, "[b]ecause this is a civil case and these [statutory] provisions are silent as to the applicable burden of proof, we conclude that the State only had to prove the violations by a preponderance of the evidence, not by clear and convincing evidence as the Appellants suggest." *State ex rel. DeWine v. Ashworth*, 4th Dist. Lawrence No. 11CA16, 2012-Ohio-5632, ¶ 64. Like the Second District in *Dann*, 2d Dist. Montgomery No. 22162, 2007-Ohio-7165, the Fourth District Court of Appeals did not further explain its reasons for choosing the lowered standard of proof.

**{¶18}** The Ninth District Court of Appeals distinguished preliminary statutory injunctions from permanent ones and indicated that each element of the statute "must be proven by clear and convincing evidence" before the trial court can order a preliminary injunction. *Sovereign Chem. Co. v. Condren*, 9th Dist. Summit No. 18285, 1998 WL 195876, *2 (Apr. 22, 1998), fn. 2. The court suggested that the distinction is reasonable because a permanent injunction is "ordered *after* a hearing on the merits has been held," thus justifying a lower standard of proof. (Emphasis sic.) *Id.* The First District Court of Appeals acknowledged the distinction made in *Condren*, but held that an injunction to

remedy a violation of Ohio's Uniform Trade Secrets Act would require proof of violation "by a preponderance of evidence." *Procter & Gamble Co.*, 140 Ohio App.3d at 268, 747 N.E.2d 268, fn. 7. The First District Court of Appeals did not apply this standard, however, finding that the case before it needed to be analyzed under "normal equity rules for issuance of an injunction." *Id.* at 268. Lastly, the Tenth District Court of Appeals applied the clear and convincing evidence standard to a statutory injunction where the statute under which the injunction was brought mandated such standard. *Miller v. Brahm*, 10th Dist. Franklin No. 94APE07-1069, 1995 WL 78970, *2 (Feb. 21, 1995).

{¶19} While we recognize that the elements necessary for a statutory injunction differ from the common law equitable remedy of injunction, we are persuaded of no reason to require different standards of proof for those actions. The State suggests that the "lesser evidentiary burden" is justified by "the heightened public interests." (App'ee Br. at 15.) The State cites no authority to support this suggestion, and the reasoning given in *Ackerman* for the distinction between statutory and equitable injunctions does not apply to the burden of proof.

> Unlike equitable-injunction actions which were developed in response to a rigid and often inadequate common-law system for redressing non-violent wrongs suffered by one individual at the hands of another, R.C. 3721.08 was designed by the General Assembly to benefit society by proscribing behavior (the unlicensed operation of nursing homes) which the General Assembly has determined not to be in the public interest. It would, therefore be redundant to require the Director of Health to show irreparable damage or lack of an adequate legal remedy once he has already

- 13 -

proved that the conditions which the General Assembly has deemed worthy of injunctive relief exist. In addition, it would be inappropriate to balance the equities or require the Director of Health to do equity in an R.C. 3721.08 injunction action because R.C. 3721.08 injunctions and similar injunctions which authorize a governmental agent to sue to enjoin activities deemed harmful by the General Assembly are not designed primarily to do justice to the parties but to prevent harm to the general public.

*Ackerman*, 55 Ohio St.2d at 57-58, 378 N.E.2d 145.

{¶20} The above-quoted Ohio Supreme Court's reasoning explains that the rationale for not requiring proof of irreparable injury, lack of an adequate legal remedy, or a higher public interest is that it would be redundant, given that the General Assembly has already determined that these elements exist in situations covered by the statute. Nevertheless, neither the General Assembly nor the Ohio Supreme Court has so far determined that these statutory elements should be easier to prove. Conversely, it is well-established that generally, "[t]he right to a preliminary injunction must be proved by clear and convincing evidence." *Davis*, 184 Ohio App.3d 705, 2009-Ohio-5430, 922 N.E.2d 272, at ¶ 29; *accord Hydrofarm, Inc. v. Orendorff*, 180 Ohio App.3d 339, 2008-Ohio-6819, 905 N.E.2d 658, ¶ 18 (10th Dist.), quoting *Vanguard Transp. Sys., Inc. v. Edwards Transfer & Storage Co., Gen. Commodities Div.*, 109 Ohio App.3d 786, 790, 673 N.E.2d 182 (10th Dist.1996) ("Under Ohio law, a party seeking a preliminary injunction 'must establish a right to the preliminary injunction by showing clear and convincing evidence of each element of the claim.' ").

{¶21} Given that the remedy requested causes the same harm to the party subject to the statutory and equitable injunction order, we find it necessary to protect their interests by requiring proof of a statutory violation by clear and convincing evidence before a preliminary injunction may issue for violation of a statute. It is especially important in situations where, as here, compliance with the preliminary injunction order results in a permanent solution, thereby allowing the plaintiff to avoid a full trial on the merits.

{¶22} Accordingly, we hold that the trial court erred in not applying the clear and convincing standard of proof for violation of the statute in granting the preliminary injunction in this case. The second assignment of error is sustained.

### *Fourth Assignment of Error—*
### *Admission of Evidence*

{¶23} In this assignment of error, 333 Joseph challenges the trial court's admission into evidence of Exhibit 6, which appears to be a photocopy of a certified photocopy of what purports to be the original Director's Orders. 333 Joseph alleges that the Director's Orders were "the cornerstone of the State's case" and without them, the State's case for preliminary injunction would have failed. (App't Br. at 14.)

{¶24} We review the trial court's rulings on admissibility of evidence under an abuse of discretion standard. *Estate of Johnson v. Randall Smith, Inc.*, 135 Ohio St.3d 440, 2013-Ohio-1507, 989 N.E.2d 35, ¶ 22. Presuming that the trial

court is in a better position to evaluate the evidence and assess its credibility, we will not reverse the trial court's evidentiary ruling unless it was "contrary to law, unreasonable, not supported by the evidence, or grossly unsound." *Schwarck v. Schwarck*, 3d Dist. Auglaize No. 2-11-24, 2012-Ohio-3902, ¶ 16; *see also State v. Smith*, 197 Ohio App.3d 742, 2012-Ohio-532, 968 N.E.2d 625, ¶ 15 (3d Dist.); *Johnson* at ¶ 22.

{¶25} As its first argument against the admissibility of Exhibit 6, 333 Joseph asserts that the State lacked proper foundation for its introduction because Exhibit 6 was not properly authenticated. We have previously noted that "the threshold standard for authenticating evidence is low as it does not require conclusive proof of authenticity." *Smith* at ¶ 16. A proponent of the evidence satisfies the requirement of authentication by providing "evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901; *accord Smith* at ¶ 16.

{¶26} Exhibit 6 appears to be a photocopy of a certified photocopy of the purported Director's Orders. (*See* Ex. P-6.) The original document seems to have born a seal of the "Ohio E.P.A." from October 31, 2012, stating "ENTERED DIRECTOR'S JOURNAL," and it appears to have been signed by "Scott J. Nally, Director." (*Id.*) Additionally, the exhibit includes the following photocopied language, "I certify this to be a true and accurate copy of the official documents as filed in the records of the Ohio Environmental Protection Agency," and an

illegible photocopied signature. (*Id.*) This "certification" seems to authenticate a photocopy of the purported Director's Orders. Nevertheless, the exhibit before us is a photocopy of that certified photocopy. In other words, there is no seal or signature certifying that the photocopy of the purportedly certified photocopy of the Director's Orders, which is before us, is authentic.

{¶27} At the hearing, the State offered testimony of one witness, Tom Sattler ("Sattler"), from the Ohio EPA, to authenticate Exhibit 6. Sattler testified that he was one of the first people to start the investigation at the site in question. (Tr. at 123.) When 333 Joseph failed to take action upon multiple notices of violation that were sent by his office to Stanley Rosenfeld prior to October 31, 2012, Sattler contacted his "central office" and "someone came up with the idea of a Unilateral Order to the company ordering them to immediately do clean up and take that route." (Tr. at 135.) Sattler identified Exhibit 6 as "the Unilateral Findings and Orders from our -- (inaudible) – Director." (*Id.*) When he was asked whether he was involved in the preparation of the document, he responded "I would have reviewed it." (*Id.*) On cross-examination, Sattler admitted that he did not prepare the Director's Orders. (Tr. at 142.) Furthermore, Sattler admitted that he did not send the Director's Orders to 333 Joseph. (*Id.*) He admitted that the trial court has to "rely upon the certification" for the authenticity of the Director's Orders. (*Id.*) As we noted above, the certification itself is merely a photocopy of what purports to be a certification.

**{¶28}** When 333 Joseph objected to the admission of Exhibit 6, the State did not respond with any arguments in support of the admission. In overruling 333 Joseph's objection, the trial court did not explain how the authentication requirement was satisfied in this case.

**{¶29}** The rules of evidence provide several alternative methods to authenticate documents. *Smith*, 197 Ohio App.3d 742, 2012-Ohio-532, 968 N.E.2d 625, at ¶ 16. "Testimony of witness with knowledge * * * that a matter is what it is claimed to be" is one of the examples of satisfying the authentication requirement. Evid.R. 901(B)(1); *see Smith* at ¶ 16. We have previously noted that Evid.R. 901 "would appear to be concerned with original documents, not copies." *State v. Coon*, 3d Dist. Logan No. 8-80-19, 1981 WL 6814, *4 (Mar. 24, 1981). But additionally, Sattler had no knowledge of who prepared the Director's Orders, admitting that he did not prepare them and testifying only that "someone came up with the idea of a Unilateral Order." (Tr. at 142.) He did not testify that the photocopy presented to the trial court was a true and accurate copy of the October 31, 2012 Director's Orders. The State's attempt to authenticate the photocopy of a certified photocopy of what purports to be the original Director's Orders through Sattler's testimony can be summarized by his inconclusive statement that he "would have reviewed" the document and his admission that the trial court has to rely upon the photocopy of the prior certification for the authenticity of the Director's Orders. (*Id.*) The State did not establish that Sattler had knowledge

about the authenticity of the document, which appears to be a photocopy of a certified photocopy of what purports to be the original Director's Orders.

**{¶30}** On appeal, the State defends the trial court's decision by arguing that the Director's Orders are "self-authenticating" as "domestic public documents" and as such, they do not need "[e]xtrinsic evidence of authenticity." (App'ee Br. at 20.) Under Evid.R. 902, a domestic public document not under seal is self-authenticating if it is

> [a] document purporting to bear the signature in the official capacity of an officer or employee of any entity included in paragraph (1) hereof, having no seal, *if a public officer having a seal and having official duties in the district or political subdivision of the officer or employee certifies under seal that the signer has the official capacity and that the signature is genuine.*

(Emphasis added.) Evid.R. 902(2). The State asserts that the "certification" that appears on Exhibit 6 satisfies the requirement above. Yet, we are only presented with a photocopy of the certification and the illegible signature on that "certification" cannot be found to be of "a public officer having a seal and having official duties in the district or political subdivision." *Id.* Furthermore, this "certification" does not state "that the signer [of the Director's Orders] has the official capacity and that the signature is genuine." *Id.*

**{¶31}** The State cites Evid.R. 1005, suggesting that a photocopy of a certification satisfies the certification requirement of Evid.E. 902. (App'ee Br. at

21.) Here, it seems that the State wants to use a photocopy of the certification to prove that the same copy of the certification is authentic. Evid.R. 1005 states that

> [t]he contents of an official record, or of a document authorized to be recorded or filed and actually recorded or filed, including data compilations in any form if otherwise admissible, may be proved by copy, *certified as correct in accordance with Rule 902*, Civ. R. 44, Crim. R. 27 or testified to be correct by a witness who has compared it with the original.

(Emphasis added.) Evid.R. 1005. This rule allows for admission of a copy *if* requirements of authentication are satisfied. *Id.* The State has not established that Exhibit 6, which appears to be a photocopy of a certified photocopy of the purported Director's Orders, was "certified as correct," as required by Evid.R. 1005. Therefore, this rule does not serve to allow for admissibility of Exhibit 6. *See State, ex rel. Taft, v. Franklin Cty. Court of Common Pleas*, 63 Ohio St.3d 190, 192-93, 586 N.E.2d 114 (1992) (striking copies of public documents because they were not "certified as correct" as required by Evid.R. 902); *Coon*, 3d Dist. Logan No. 8-80-19, 1981 WL 6814, at *4 ("An uncertified photo copy alone is not sufficiently authenticated.").

{¶32} The facts before us resemble those in *Coon*, where we recognized that "[a]lthough couched in terms of a certification," a document offered in evidence was "not signed except in copy, i.e. the certifying signature [was] a copy." *Coon* at *3. We held that this official record was not properly certified

because "[t]here was, in short, no proper authentication of [the] document as a public record or as a self-authenticating copy thereof." *Id.* at *4.

{¶33} While we acknowledge that under Civ.R. 44, a "proof of official records or of entry" may be established "by any other method authorized by law," the State did not allege, either in the trial court or on appeal, that any other authentication method authorized by law was satisfied. Accordingly, although we are to defer to the trial court's discretion, we are unable to hold that the trial court's decision to admit Exhibit 6 over the objection of 333 Joseph was supported by the law and the evidence as it is before us.

{¶34} As a result of this finding, we need not address 333 Joseph's alternative argument against admissibility, which stated that the trial court improperly admitted Exhibit 6 where there was no evidence that the Director's Orders had been served upon 333 Joseph. We note, however, that 333 Joseph cites no law in support of his claim that failure to prove service would require the trial court to exclude Exhibit 6 from evidence.

{¶35} For the foregoing reasons, the fourth assignment of error is sustained.

### *Third Assignment of Error—*
### *Manifest Weight of the Evidence*

{¶36} Based on our decision that the Director's Orders were not properly admitted, we hold that the remaining evidence presented at the injunction hearing did not prove statutory violations by clear and convincing evidence, especially

considering the trial court's remarks at the conclusion of the hearing. The trial court commented, "if you could convince me that their burden is higher than a preponderance of the evidence, you know, that -- that could, you know, that would be -- that would make a difference here, it could." (Tr. at 233-234.)

{¶37} Accordingly, the trial court's grant of preliminary injunction was in error and the third assignment of error is sustained.

### *First Assignment of Error—Compliance with Civ.R. 56 in Issuing an Injunction Order*

{¶38} Our decision results in vacation of the Injunction Order. Therefore, the first assignment of error is moot.

### *Conclusion*

{¶39} Having reviewed the arguments, the briefs, and the record in this case, we find errors prejudicial to Appellants, in the particulars assigned and argued. The judgment of the Marion County Court of Common Pleas is therefore reversed. We remand the matter to the trial court for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**SHAW and PRESTON, J.J., concur.**

**/jlr**