**HYDROFARM, INC., Appellee and Cross–Appellant,**

v.

**ORENDORFF, Appellant and Cross–Appellee.**

[Cite as *Hydrofarm, Inc. v. Orendorff,* 180 Ohio App.3d 339, 2008-Ohio-6819.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 08AP–287.

Decided Dec. 23, 2008.

340

Lawrence Law Office, Rodd S. Lawrence, and Linda J. Lawrence, for appellee and cross-appellant.

Madison & Rosan, L.L.P., Timothy G. Madison, Kristin E. Rosan, and Darcy A. Burdette, for appellant and cross-appellee.

---

PETREE, Judge.

{¶ 1} Defendant-appellant and cross-appellee, Phil Orendorff ("Orendorff" or "defendant"), appeals from a judgment of the Franklin County Court of Common Pleas, which enjoined defendant from employment with a competitor of plaintiff-appellee and cross-appellant, Hydrofarm, Inc. ("plaintiff" or "Hydrofarm") for six months and from disclosing plaintiff's confidential information or trade secrets for six months. Hydrofarm cross-appeals. Because the trial court abused its discretion by enjoining defendant from employment with a former employer's competitor in the absence of a noncompetition agreement, we reverse the judgment of the Franklin County Court of Common Pleas.

{¶ 2} Phil Orendorff worked for Hydrofarm, a business that designs, manufactures, and sells indoor gardening products, for approximately 14 years. During his employment with Hydrofarm, Orendorff necessarily became aware of trade secrets, as well as confidential and proprietary information that belonged to Hydrofarm.

{¶ 3} On November 30, 2005, Orendorff and Hydrofarm executed a separation agreement that, among other things, prohibited Orendorff from disclosing confidential information, unless compelled by legal process, but did not require Orendorff to forego employment with any competitors of Hydrofarm.[1] Approxi-

---

1. {¶ a} By express terms of the separation agreement, both parties agreed that "[t]his Agreement has been made in California and California law applies to it." Before the trial court, defendant moved in limine to prevent Hydrofarm from relying upon Ohio law. The trial court rendered no ruling as to this motion in limine.

mately one and one-half years later, on May 14, 2007, Orendorff was hired by Sunlight Supply, Inc. ("Sunlight Supply"), a direct competitor of Hydrofarm, for a position that was substantially similar to his most recent position with Hydrofarm.

{¶ 4} Alleging, among other things, breach of contract; unfair competition; misappropriation of trade secrets, a violation of the Ohio Uniform Trade Secrets Act, R.C. 1333.61, et seq.; disclosure of confidential information without Hydrofarm's consent, a violation of R.C. 1333.81; breach of a confidential relationship; breach of fiduciary duty; and conversion, Hydrofarm later sued Orendorff in the Franklin County Court of Common Pleas. Besides seeking a monetary remedy and the return of property allegedly misappropriated by Orendorff, Hydrofarm also sought injunctive relief. Alleging breach of contract, tortious interference with a business relationship, tortious interference with a contract, and malicious prosecution, Orendorff counterclaimed against Hydrofarm.

{¶ 5} Concurrent with the filing of its verified complaint, Hydrofarm moved for a temporary restraining order and a preliminary injunction, enjoining Orendorff from engaging in activities as an employee of Sunlight Supply or any other competitor of Hydrofarm and from engaging in any activities related to the design, manufacture, marketing, or selling of indoor gardening products. The common pleas court thereafter issued a temporary restraining order against Orendorff, which it dissolved after one week upon defendant's motion, and referred Hydrofarm's request for a preliminary injunction to a magistrate of that court.

{¶ 6} After conducting an evidentiary hearing, the common pleas court, through the magistrate, issued a decision, wherein the magistrate recommended enjoining defendant for a period of six months from being employed by a competitor of plaintiff and disclosing plaintiff's confidential information or trade secrets.

{¶ 7} From the magistrate's decision, both Orendorff and Hydrofarm filed objections. Overruling the parties' objections, the common pleas court adopted the magistrate's decision. From the common pleas court's judgment granting a preliminary injunction and overruling the parties' objections to the magistrate's decision, Orendorff appeals and Hydrofarm cross-appeals.

{¶ 8} Claiming that Sunlight Supply would terminate his employment if the trial court's injunction were in effect, Orendorff moved the trial court to stay enforcement of its preliminary injunction. The trial court denied defendant's

---

{¶ b} In this appeal, however, neither party asserts that California law is controlling, and both parties rely upon Ohio law to support their positions. Absent any claim that California law controls, we shall apply Ohio law in the instant matter.

motion. The trial court did, however, order Hydrofarm to post a $25,000 bond to compensate defendant if defendant were to prevail upon appeal.

{¶ 9} After the trial court denied his motion for a stay, Orendorff moved this court to stay enforcement of the trial court's preliminary injunction. This court thereafter granted defendant's motion, provided that defendant post a cash or supersedeas bond in the amount of $10,000 with the clerk of the trial court. Defendant ultimately posted a $10,000 cash bond with the clerk of the trial court.

{¶ 10} After this court granted defendant's motion to stay enforcement of the trial court's preliminary injunction, Hydrofarm moved this court to reconsider its decision and to certify a conflict, pursuant to App.R. 26 and App.R. 25, respectively. Finding that Hydrofarm's motion to certify a conflict was untimely, this court denied Hydrofarm's App.R. 25 motion. Also, finding that pursuant to Civ.R. 62, an appellant is entitled to a stay of execution pending appeal provided that an appellant post an adequate supersedeas bond, this court denied Hydrofarm's motion for reconsideration. See *Hydrofarm, Inc. v. Orendorff* (Sept. 4, 2008), Franklin App. No. 08AP–287 (Memorandum Decision).

{¶ 11} In his appeal, Orendorff assigns three errors for our consideration:

[I.] The trial court erred as a matter of law when it adopted the magistrate's decision because the decision is in direct contravention to the 10th District Court of Appeals case *Levine v. Beckman* which is directly on point.

[II.] The trial court erred as a matter of law when it adopted the magistrate's decision because no court in Ohio that has applied the inevitable disclosure doctrine has held that an employer can enjoin its former employee from working for a competitor absent a non-compete agreement between the parties.

[III.] The trial court erred as a matter of law when it adopted the magistrate's decision because Ohio courts affirmatively and continually hold that employees may work for a competitor absent a non-compete agreement between the parties.

{¶ 12} On cross-appeal, Hydrofarm advances a single assignment of error:

In direct conflict with R.C. § 1333.62(A), the lower court erroneously and arbitrarily limited the duration of an injunction to prevent disclosure of trade secrets, granted pursuant to R.C. § 1333.61 et seq., the Ohio Uniform Trade Secrets Act.

{¶ 13} Because Orendorff's assignments of error and Hydrofarm's assignment of error on cross-appeal are interrelated, we shall jointly address them.

{¶ 14} Orendorff and Hydrofarm do not dispute that during his employment with Hydrofarm, Orendorff necessarily became aware of trade secrets, as well as confidential and proprietary information that belonged to Hydrofarm. Moreover, Orendorff does not dispute that under his separation agreement, he is prohibited

from disclosing Hyrdrofarm's trade secrets and confidential information. What is disputed by the parties, however, is whether the trial court properly could enjoin Orendorff from employment with Sunlight Supply and, assuming for the sake of argument that the trial court properly could enjoin Orendorff from working for Sunlight Supply, the duration of such an injunction.

{¶ 15} Specifically, Orendorff's assignments of error resolve to the following: (1) whether, absent a noncompetition agreement by the parties, a trial court, as a matter of law, may enjoin a worker from working for a direct competitor of a former employer under the doctrine of inevitable disclosure, (2) whether, absent a noncompetition agreement, the trial court abused its discretion by adopting the magistrate's decision enjoining defendant from working for a direct competitor of Hydrofarm, and (3) whether this court's decision in *Levine v. Beckman* (1988), 48 Ohio App.3d 24, 548 N.E.2d 267, should have been relied upon by the trial court as a basis to deny Hydrofarm's motion for injunctive relief. For its part, Hydrofarm asserts that the trial court properly granted injunctive relief under Ohio's Uniform Trade Secrets Act, R.C. 1333.61 et seq., but the trial court erred when it arbitrarily limited the duration of the preliminary injunction to six months.

{¶ 16} The rule against inevitable disclosure "holds that a threat of harm warranting injunctive relief exists when an employee with specialized knowledge commences employment with a competitor." *Berardi's Fresh Roast, Inc. v. PMD Ents., Inc.*, Cuyahoga App. No. 90822, 2008-Ohio-5470, 2008 WL 4681825, at ¶ 27. "[T]his doctrine is applied when a former employer seeks 'injunctive' relief when a former employee begins work with a competitor while the *noncompetition clause* has not expired." (Emphasis added.) Id. Cf. *Dexxon Digital Storage, Inc. v. Haenszel*, 161 Ohio App.3d 747, 2005-Ohio-3187, 832 N.E.2d 62, discretionary appeal and cross-appeal not allowed, 107 Ohio St.3d 1682, 2005-Ohio-6480, 839 N.E.2d 403 (applying the "inevitable disclosure" doctrine to enjoin a former employee in the absence of a noncompetition agreement).

{¶ 17} Although in *Dexxon*, the Fifth District Court of Appeals applied the "inevitable disclosure" doctrine to enjoin a former employee in the absence of a noncompetition agreement, *Dexxon* is factually distinguishable because in *Dexxon* both entities were engaged in the highly technical business of large-scale electronic data storage. Moreover, *Dexxon* does not reveal what sort of trade secrets the former employee possessed or how these former employees afforded the rival entity an irreparable competitive advantage over the plaintiff.

{¶ 18} Under Ohio law, a party seeking a preliminary injunction "must establish a right to the preliminary injunction by showing clear and convincing evidence of each element of the claim." *Vanguard Transp. Sys., Inc. v. Edwards*

*Transfer & Storage Co., Gen. Commodities Div.* (1996), 109 Ohio App.3d 786, 790, 673 N.E.2d 182, appeal not allowed, 76 Ohio St.3d 1495, 670 N.E.2d 242, citing *Mead Corp. v. Lane* (1988), 54 Ohio App.3d 59, 560 N.E.2d 1319, jurisdictional motion overruled (1989), 41 Ohio St.3d 709, 534 N.E.2d 1211. "In deciding whether to grant a preliminary injunction, a court must look at: (1) whether there is a substantial likelihood that plaintiff will prevail on the merits, (2) whether plaintiff will suffer irreparable injury if the injunction is not granted, (3) whether third parties will be unjustifiably harmed if the injunction is granted, and (4) whether the public interest will be served by the injunction." *Vanguard Transp. Sys., Inc.,* at 790, 673 N.E.2d 182, citing *Valco Cincinnati, Inc. v. N & D Machining Serv., Inc.* (1986), 24 Ohio St.3d 41, 24 OBR 83, 492 N.E.2d 814; *Goodall v. Crofton* (1877), 33 Ohio St. 271, 1877 WL 186.

■ {¶ 19} Whether to grant or deny an injunction "is solely within the trial court's discretion and, therefore, a reviewing court should not disturb the judgment of the trial court absent a showing of a clear abuse of discretion." *Garono v. State* (1988), 37 Ohio St.3d 171, 173, 524 N.E.2d 496, citing *Perkins v. Quaker City* (1956), 165 Ohio St. 120, 125, 59 O.O. 151, 133 N.E.2d 595. See also *Brentlinger Ent. v. Curran* (2001), 141 Ohio App.3d 640, 646, 752 N.E.2d 994. " ' " "The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " ' " *Byers v. Robinson,* Franklin App. No. 08AP–204, 2008-Ohio-4833, 2008 WL 4328189, at ¶ 58, quoting *State v. Smith,* Franklin App. No. 03AP–1157, 2004-Ohio-4786, 2004 WL 2008465, at ¶ 10, quoting *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140, quoting *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144.

■ {¶ 20} When resolving a matter involving trade secrets, "[a] court must balance 'the conflicting rights of an employer to enjoy the use of secret processes and devices which were developed through his own initiative and investment and the right of employees to earn a livelihood by utilizing their personal skill, knowledge and experience.' " *Jacono v. Invacare Corp.,* Cuyahoga App. No. 86605, 2006-Ohio-1596, 2006 WL 832451, at ¶ 19, quoting *Valco Cincinnati, Inc.,* 24 Ohio St.3d at 41, 24 OBR 83, 492 N.E.2d 814, citing *GTI Corp. v. Calhoon* (S.D.Ohio 1969), 25 Ohio Misc. 187, 309 F.Supp. 762, 768.

■ {¶ 21} Neither this court nor the Supreme Court of Ohio has applied the inevitable-disclosure doctrine in a case that did not involve an enforceable noncompetition agreement. An employee possessed of his former employer's trade secrets "[has] the right to take employment in a competitive business, and to use his knowledge (other than trade secrets) and experience, for the benefit of the new employer." *B.F. Goodrich v. Wohlgemuth* (1963), 117 Ohio App. 493,

500, 24 O.O.2d 290, 192 N.E.2d 99; see also *Curry v. Marquart* (1937), 133 Ohio St. 77, 10 O.O. 93, 11 N.E.2d 868, syllabus.

{¶ 22} Although Ohio passed its version of the Uniform Trade Secrets Act after *B.F. Goodrich,* see, generally, R.C. 1333.61 et seq., the act did not so much alter the common law as codify it. Consistent with common law, Ohio's version of the Uniform Trade Secrets Act provides that threatened misappropriation of trade secrets may be enjoined. See R.C. 1333.62. If the General Assembly had intended to permit injunction of competition or employment under the act, it easily could have so specified. Instead, it left the law substantially intact; that is, employers or employees are free to, and frequently do, enter into noncompetition agreements, while the state has an interest in promoting morality in business affairs and innovation.

{¶ 23} Here, defendant last worked for Hydrofarm in November 2005. The parties stipulated that defendant acquired knowledge of Hydrofarm's trade secrets concerning its trade-show procedures, customers, prices, and contracts. Both his employment agreement and separation agreement contained covenants whereby defendant agreed not to use or disclose his former employer's trade secrets. The parties have never entered into, nor has Hydrofarm ever sought, a noncompetition agreement.

{¶ 24} Nearly two years after his separation from Hydrofarm, defendant became employed by Sunlight Supply. The parties stipulated that Sunlight Supply is a direct competitor of Hydrofarm, marketing the same products to the same types of customers in the same geographical area. The parties further stipulated that defendant's position with Sunlight Supply is substantially similar to that which he held with Hydrofarm. But this alone is insufficient to warrant the injunction that the trial court issued, even under the "inevitable disclosure" doctrine.

{¶ 25} Hydrofarm must demonstrate by clear and convincing evidence not only that defendant possesses Hydrofarm's trade secrets, but also that defendant will inevitably disclose them to Sunlight Supply or will utilize those trade secrets in his competitive work on behalf of Sunlight Supply and that those trade secrets will enable Sunlight Supply to achieve a substantial competitive advantage over Hydrofarm. In other words, Hydrofarm must demonstrate that the danger of misappropriation in this case threatens irreparable harm. "Actual irreparable harm is usually not presumed, but instead must be proved." *Levine,* 48 Ohio App.3d 24, 548 N.E.2d 267, paragraph four of the syllabus.

{¶ 26} Although the Ohio Trade Secrets Act permits injunction of threatened misappropriation of trade secrets, the usual elements for an injunction must be proved by clear and convincing evidence, even when the plaintiff seeks to

invoke the inevitable-disclosure doctrine to enjoin a former employee's employment with a competitor.[2] Here, Peter Wardenburg, Hydrofarm's executive vice president, testified that the information involved includes Hydrofarm's price lists and sales goals, but these are created annually, and it is unclear how two-year-old price lists and sales-goal information would produce a competitive advantage for Sunlight Supply. Wardenburg testified that defendant possesses production information related to Hydrofarm's "private label" sales, but because defendant was a salesman and not involved in the actual production of such products, it appears that his knowledge was limited to pricing and marketing efforts. Such information is hardly static.

{¶ 27} Wardenburg also testified that defendant possessed consumer-research analysis; that is, the results of customer polling conducted in advance of each trade show, which was used to determine the product selection and display for each particular show. According to Wardenburg, there are numerous trade shows in North America every year. Thus, it is difficult to imagine, and Wardenburg did not explain, how two-year-old customer-polling results for shows that have already occurred pose the threat of an unfair competitive advantage. Wardenburg also testified that defendant possessed information about new product concepts. However, he also testified that it was defendant who would

---

2. {¶ a} "The Supreme Court of Ohio has held that when an injunction is authorized by statute, normal equity considerations do not apply, and a party is entitled to an injunction without proving the ordinary equitable requirements, upon a showing that the party has met the requirements of the statute for issuance of the injunction." *Procter & Gamble Co. v. Stoneham* (2000), 140 Ohio App.3d 260, 273–274, 747 N.E.2d 268 (Painter, J., concurring separately), cause dismissed (2001), 91 Ohio St.3d 1478, 744 N.E.2d 775, citing *Ackerman v. Tri–City Geriatric & Health Care* (1978), 55 Ohio St.2d 51, 56, 9 O.O.3d 62, 378 N.E.2d 145; *State ex rel. Pizza v. Rezcallah* (1998), 84 Ohio St.3d 116, 123, 702 N.E.2d 81.

{¶ b} Construing *State ex rel. Jones v. Hamilton Cty. Bd. of Commrs.* (1997), 124 Ohio App.3d 184, 189, 705 N.E.2d 1247, appeal not allowed (1998), 81 Ohio St.3d 1457, 690 N.E.2d 549, the First District Court of Appeals in *Stoneham,* however, also observed that in *Jones* the First District Court of Appeals "held that the rule in *Ackerman* is limited to those statutes that contain specific criteria that the court must use in determining entitlement to an injunction. When a statute merely provides that a party is entitled to injunctive relief as well as other types of relief, there is no 'statutory injunction' within the meaning of *Ackerman,* and the party requesting the injunction must use the general equitable principles governing the issuance of injunctive relief." *Stoneham,* at 274, 747 N.E.2d 268.

{¶ c} In *Stoneham,* the court ultimately found that R.C. 1333.62 did not contain the statutory guidelines that *Jones* found necessary and, as a consequence, normal equity rules for the issuance of an injunction applied and "clear and convincing" evidence was required to support an injunction. Id. at 274, 747 N.E.2d 268.

{¶ d} Cf. *Sovereign Chem. Co. v. Condren* (Apr. 22, 1998), Summit App. No. 18285, 1998 WL 195876, fn. 2, citing R.C. 1333.61(B) and (D), and R.C. 1333.62(A) (observing that R.C. 1333.62 "does not specify 'clear and convincing' evidence as the standard which a plaintiff must meet. The clear language of Ohio's Uniform Trade Secret[s] Act indicates that where the requirements of a trade secret are proven, and where actual or threatened misappropriation of the trade secret by the defendant is shown, the court may issue an injunction").

suggest new products based on his conversations at trade shows and with customers. This information seems more the product of defendant's own 14 years of sales and marketing experience than technical information posing a threat of misappropriation.

{¶ 28} Wardenburg further testified that defendant possessed information about Hydrofarm's marketing and advertising strategies. More specifically, this meant sales leads, pricing information, decisions as to which trade shows to attend, and information about the way in which Hydrofarm's products would be displayed and marketed at each trade show. Again, the pricing, sales leads, and trade show selection information is out of date, and product displays would have been visible to anyone attending the same trade shows attended by Hydrofarm.

{¶ 29} Finally, the record contains no evidence that defendant has misappropriated or disclosed any of Hydrofarm's trade secrets or other confidential business information or that he engaged in any nefarious activities or attempts to circumvent any of the parties' agreements. In fact, Wardenburg testified that he has no reason to believe that defendant has shared any confidential information with Sunlight Supply.

{¶ 30} In cases in which courts have enforced the inevitable-disclosure doctrine in absence of a noncompetition agreement, the former employee possessed timely, sensitive, strategic, and/or technical information that, if it was proved, posed a serious threat to his former employer's business or a specific segment thereof. See *PepsiCo, Inc. v. Redmond* (C.A.7, 1995), 54 F.3d 1262; *Barilla Am., Inc. v. Wright* (S.D.Iowa, 2002), No. 4–02–CV–90267, 2002 WL 31165069; *Procter & Gamble Co. v. Stoneham* (2000), 140 Ohio App.3d 260, 747 N.E.2d 268. On the record before us, the present case is distinguishable from those cases.

{¶ 31} Because Hydrofarm failed to demonstrate by clear and convincing evidence that it would suffer irreparable harm due to defendant's employment with Sunlight Supply, we therefore find that it was inappropriate for the common pleas court to have applied the inevitable-disclosure doctrine in this case. Therefore, we hold that the trial court abused its discretion by granting an injunction in Hydrofarm's favor.

{¶ 32} Accordingly, we sustain all three of defendant's assignments of error, overrule plaintiff's cross-assignment of error, and reverse the judgment of the Franklin County Court of Common Pleas.

Judgment reversed.

SADLER and FRENCH, JJ., concur.