[Cite as *Intralot, Inc. v. Blair*, 2018-Ohio-3873.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Intralot, Inc., | : | |
| Plaintiff-Appellant, | : | |
| | | No. 17AP-444 |
| v. | : | (C.P.C. No. 17CV-1669) |
| Robert Blair, Director | : | (ACCELERATED CALENDAR) |
| Ohio Department of Administrative | | |
| Services et al., | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on September 25, 2018

**On brief:** *Carpenter Lipps & Leland LLP*, *Jeffrey A. Lipps*, and *Michael N. Beekhuizen*; *Jay M. Lapine*, for appellant. **Argued:** *Jeffrey A. Lipps*.

**On brief:** *Michael DeWine*, Attorney General, *Hilary R. Damaser*, and *Trista M. Turley*, for appellees Robert Blair and Ohio Department of Administrative Services. **Argued:** *Trista M. Turley*.

**On brief:** *Michael DeWine*, Attorney General, and *Charles E. Febus*, for appellees Dennis Berg and Ohio Lottery Commission. **Argued:** *Charles E. Febus*.

**On brief:** *Murray Murphy Moul + Basil LLP*, *Geoffrey J. Moul*, and *Jonathan P. Misny*, for amicus curiae Scientific Games International, Inc.

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1}   Plaintiff-appellant, Intralot, Inc., appeals a decision of the Franklin County Court of Common Pleas finding in favor of defendants-appellees, Ohio Department of Administrative Services and its director, Robert Blair (collectively "DAS"), and Ohio Lottery Commission and its director, Dennis Berg (collectively "Lottery"), on appellant's request for a preliminary injunction to enjoin award and execution of a lottery services contract with another vendor.  We affirm the trial court's decision as to the preliminary injunction and reverse the trial court's decision to dismiss the complaint with prejudice.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}   On August 3, 2016, the State of Ohio, through the DAS Office of Procurement Services, issued a Request for Proposal ("RFP"), pursuant to R.C. 125.071 and Ohio Adm.Code 123:5-1-08, for "COOPERATIVE SERVICES FOR THE OHIO LOTTERY COMMISSION: Instant Ticket Warehousing, Distribution and TelSell Services." (Emphasis sic.)  (RFP at 1.)  The scope of work for the project primarily includes data processing, warehouse operations, security management, management of a telephone based order system, and the management of the inventory, packaging and delivery, return receipt, and destruction of instant tickets and gaming supplies.  The RFP identifies appellant as the incumbent provider of such needs and that appellant was awarded the contract for these services in 2009.

{¶ 3}   The RFP evaluation process is structured into a threshold "[m]andatory [r]equirements" step followed by three scored components: technical proposals, cost proposals, and minority business enterprise ("MBE") subcontracting plan. (RFP at Section 2.1.) The mandatory requirements step, which is not scored, involves a determination the offeror's ability to meet certain requirements related to bonding, agreement to be audited, and having had a contract for similar services within the past five years.  If the offeror provides sufficient information to DAS to meet the mandatory requirements, "the Offeror's Proposal will be included in the next step of the evaluation process which involves the scoring of the Proposal Technical Requirements (Table 3), followed by the scoring of the Cost Proposals."  (RFP at Section 2.2.)

{¶ 4}   The technical proposal requirements are broken down into certain criteria. The RFP indicates that DAS scores the technical proposals by multiplying the weight

assigned to each criteria by the rating score (on a 0 through 5 scale)[1] of the particular offeror's response. Presentations and site visits are permitted during this evaluation process.

{¶ 5} "Once the technical merits of a Proposal are evaluated, the costs of that Proposal will be considered." (RFP at Section 2.6.) However, it is within DAS's discretion to wait to factor in a proposal's cost until after the conclusion of any interviews, presentations, demonstrations, or discussions or to conduct an initial review of costs before evaluating the technical merits of the proposals to determine if any proposals should be rejected because of excessive cost. Cost proposals are required to be submitted in a sealed envelope separate from the technical proposal. Per the RFP:

> DAS will use the information the Offeror submits on the Cost Summary Form to calculate Cost Proposal Points. DAS will calculate the Offeror's Cost Proposal points after the Offeror's total technical points are determined, using the following method:
>
> Cost points = (lowest Offeror's cost/Offeror's cost) x Maximum Allowable Cost Points as indicated in the "Scoring Breakdown" table. "Cost" = Percentage of Sales as identified in the Cost Summary section of Offeror's Proposal. In this method, the lowest cost proposed will receive the maximum allowable points.
>
> The number of points assigned to the cost evaluation will be prorated, with the lowest accepted Cost Proposal given the maximum number of points possible for this criterion. Other acceptable Cost Proposals will be scored as the ratio of the lowest Cost Proposal to the Proposal being scored, multiplied by the maximum number of points possible for this criterion.

(RFP at Section 2.7.)

{¶ 6} Regarding the MBE subcontracting plan component, "the Offeror who identifies one or more qualified Ohio certified MBE subcontractor and has the highest percentage of its cost proposal set aside exclusively for identified Ohio certified MBE subcontractors' Work will receive the maximum number of points set forth in the RFP." (RFP at Section 2.8.) The remaining offerors receive a percentage of the maximum points

---

[1] Per RFP Section 2.4, 0 points means "does not meet" requirements, 1 point means "weak," 2 points means "weak to meets," 3 points means "meets," 4 points means "meets to strong," and 5 points means "strong."

allowed while offerors who do not identify a percentage to be set aside for Ohio certified MBE subcontractors or do not identify one or more Ohio certified MBE subcontractor will receive zero points.

{¶ 7} The maximum possible points for each scored component is 1,075 points for the proposal technical requirements, 630 points for the proposal cost, and 95 points for a MBE subcontracting plan, for a grand total of 1,800 possible points. The RFP states that "[t]he Offeror with the highest point total from all phases of the evaluation (Technical Points + Cost Points) will be recommended for the next phase of the evaluation." (RFP at Section 2.9.) Furthermore:

> If DAS finds that one or more Proposals should be given further consideration, DAS may select one or more of the highest-ranking Proposals to move to the next phase. DAS may alternatively choose to bypass any or all subsequent phases and make an award based solely on the Proposal evaluation phase.
>
> * * * DAS may reject any Proposal that is not in the required format, does not address all the requirements of this RFP, or that DAS believes is excessive in price or otherwise not in the interest of the State to consider or to accept. In addition, DAS may cancel this RFP, reject all the Proposals, and seek to do the Work through a new RFP or by other means.

(RFP at Sections 2.9 – 2.10.)

{¶ 8} Appellant and Scientific Games International, Inc. ("Scientific Games") were the only two vendors to submit a response to the RFP. An RFP evaluation committee was formed consisting of six Lottery employees and several non-scoring members, including DAS procurement analyst Therese Gallego and Lottery contract and compliance member Gwendolyn Penn. The initial scoring meeting of the RFP evaluation committee was held on October 20, 2016, where the committee members developed initial scores as to each of the technical criteria. Site visits were then taken to appellant's existing warehouse operations and to Scientific Games' warehouse in Pennsylvania, where it operated the Pennsylvania lottery's instant ticket warehousing distribution and TelSell operations.

{¶ 9} At their final meeting on December 13, 2016, the evaluation committee signed the final consensus score sheet, which sets forth appellant and Scientific Games'

comparative performance on mandatory requirements, technical proposals, proposal cost, and MBE subcontracting plans. Both offerors met the mandatory requirements. For the technical proposal, out of a maximum score of 1,075 points, the committee assigned appellant a total score of 545 and Scientific Games a total score of 812. Appellant did not receive any scores of 0 in the scoring of the technical proposal. Appellant's MBE subcontracting plan was assigned 0 points while Scientific Games' MBE plan was assigned 95. The consensus score sheet indicated that Scientific Games also received the maximum number of points (630) for its proposal cost. Appellant's proposal cost was not opened or scored.

{¶ 10} Starting on December 16, 2016, negotiation with Scientific Games ensued, with DAS eventually requesting a best and final offer from Scientific Games. DAS did not engage in any price negotiation or request a best and final offer from appellant. DAS executed a contract with Scientific Games on January 6, 2017, and on January 10, 2017, the DAS state purchasing contracts manager informed appellant it had not been awarded the contract. According to the letter, "[d]uring the evaluation of all valid responses, DAS determined that the proposal from [appellant] was not responsive" because "[t]he Offeror's technical proposal did not achieve an acceptable score, as determined during the evaluation." (Jan. 10, 2017 Letter at 1.)

{¶ 11} Appellant made a public records request to DAS and Lottery. By letter dated January 27, 2017, appellant lodged with DAS a protest of the determination that its proposal was not responsive, its technical proposal did not achieve an acceptable score, and another offeror was most advantageous to the state and would be awarded the contract. Appellant filed a supplemental protest on February 3, 2017 based on documents produced by DAS and adding an additional ground for protest related to exertion of improper influence over the evaluation process.

{¶ 12} On February 16, 2017, appellant filed a motion for a temporary restraining order in the common pleas court against DAS, the Lottery, and the respective directors. In its motion, appellant asked the court to enjoin the defendants from proceeding with an award to another offeror for two reasons: the appellees interfered with and compromised appellant's ability to present a full and complete protest of the DAS decision by refusing to produce public records, and DAS's decision was an abuse of discretion and a violation

of Ohio law and the terms of the RFP.  The motion was supported by a verified complaint asking for a writ of mandamus related to public records, injunction, declaratory relief, and asserting due process violations.  The trial court granted appellant's motion for a temporary restraining order and set a hearing on the preliminary injunction.

{¶ 13} A magistrate held a hearing on the preliminary injunction on March 3 through March 7, 2017.  On March 22, 2017, the magistrate issued a decision finding in favor of appellant on the preliminary injunction.  The magistrate found all witnesses to be credible.  In her findings of fact, the magistrate details DAS's testimony regarding why it did not open appellant's cost proposal, commenting:

> [DAS Procurement Manager] Jennifer Shaefer testified that if the technical and MBE subcontracting plan proposals do not score a "meets," or 60% (an average score of 3/5) ("60% Rule"), then the cost proposal is not opened or scored.  She testified that the 60% Rule is DAS's policy and that DAS procurement analysts receive training on this policy.  She admitted that the 60% Rule is not contained anywhere in the RFP, is not written down in any internal DAS policy and was not disclosed to the evaluation committee members until after the technical scoring had been completed.
>
> * * * Jennifer Shaefer further testified that the 60% Rule is purposefully withheld from offerors so that the offerors submit their best quality proposals rather than submitting a bare minimum technical requirements proposal.  She further testified that DAS purposefully withheld the 60% Rule from the evaluation committee members out of fear that a committee member may attempt to influence the committee consensus to score one or more technical criteria falsely high.

(Mag.'s Decision at 8.)

{¶ 14} The magistrate found the process and criteria for evaluation as set forth in the RFP did not include any minimum required technical score to be deemed "acceptable."  (Mag.'s Decision at 4.)  Also in her findings of fact, the magistrate states that DAS's application of the 60 percent rule directly conflicts with several sections of the RFP, including the following excerpts of Sections 2.2, 2.6, and 2.7:

> 2.2 <u>PROPOSAL EVALUATION CRITERIA</u> If the Offeror provides sufficient information to DAS in its Proposal demonstrating it meets the Mandatory Requirements, the Offeror's Proposal will be included in the next step of

> evaluation process which involves the scoring of the Proposal Technical Requirements (Table 3), followed by the scoring of the Cost Proposal.
>
> * * *
>
> **2.6** <u>PRESENTATION AND SITE VISITS</u> * * * [A] failure by an Offeror to make a required submission or meet a mandatory requirement will normally result in a rejection of that Offeror's Proposal. * * * Once the technical merits of a Proposal are evaluated, the costs of that Proposal will be considered. * * *
>
> **2.7** <u>COST PROPOSAL POINTS</u> DAS will use the information the Offeror submits on the Cost Summary Form to calculate Cost Proposal Points. DAS will calculate the Offeror's Cost proposal points after the Offeror's total technical points are determined * * *.

The magistrate noted that in the RFP glossary, the term "will" means the same thing as "mandatory" and that the consensus score sheet likewise states that "[o]nce the technical merits of a Proposal are considered, the costs of that Proposal will be considered." (RFP at Glossary; Consensus Score Sheet at 3.)

{¶ 15} The magistrate noted that it is uncontested that appellant's cost proposal was not opened because DAS determined that appellant's technical score did not meet the 60 percent rule. Specifically, appellant's technical proposal score equated to 50.7 percent of possible points, and, when points available for the MBE plan are factored in, appellant's percentage dipped to 46.6 percent of total points available. Comparatively, Scientific Games' technical proposal score equated to 75.6 percent of possible points, and its combined points for the technical proposal and MBE plan equaled 77.6 percent of total points available.

{¶ 16} As a finding of fact, the magistrate states "[i]t is not possible to know what impact disclosure of the 60% rule in the RFP would have had on [appellant's] proposal or the scoring by the evaluation committee." (Mag.'s Decision at 16.) The magistrate cites to the testimony of appellant's vice president of business development, Lynn Becker, and the cross-examination of Shaefer.

{¶ 17} In her conclusions of law, the magistrate found that appellant "did prove by clear and convincing evidence that DAS abused its discretion by refusing to consider

[appellant's] proposal after [appellant] failed to achieve a minimum technical score of 60%." (Mag.'s Decision at 22.) The magistrate notes that it is uncontested that DAS rejected appellant's technical proposal and refused to consider appellant's cost proposal based on the 60 percent rule, which is not written down in any internal DAS policy and was not disclosed to the evaluation committee members. The magistrate concluded:

> The evidence established that [appellant's] proposal met every mandatory requirement and that it did not receive any zeros in the technical portions of the evaluation. Sections 2.2, 2.6 and 2.7 of the RFP required DAS to consider and score [appellant's] cost proposal after scoring its technical proposal. Directly contrary to these provisions, DAS did not consider [appellant]'s cost proposal as a result of its application of the 60% Rule.
>
> * * * Although DAS did not misapply an evaluation criteria of the RFP as the sole disqualifier of [appellant]'s proposal like the state agency in [*State ex rel.*] *Associated Builders* [*& Contrs. of Cent. Ohio v. Franklin Cty. Bd. of Commrs.*, 125 Ohio St.3d 112, 2010-Ohio-1199], they most certainly applied a completely non-disclosed rule that was in direct conflict with three other sections of the RFP as the sole disqualifier of [appellant]'s proposal.
>
> As such, the Magistrate finds that DAS's application of the 60% rule as the sole disqualifier of [appellant]'s proposal was arbitrary and unreasonable. Therefore, the Magistrate finds by clear and convincing evidence that DAS abused its discretion in applying the 60% Rule and refusing to consider [appellant]'s cost proposal and [appellant] is substantially likely to succeed on the merits with regard to its first argument.

(Mag.'s Decision at 25-26.)

{¶ 18} Regarding the irreparable harm element to support injunction, the magistrate disagreed with appellant that firing employees, shutting down a warehouse, and reputational harm is evidence of irreparable harm to support an injunction but, nevertheless, concluded that because monetary damages are unavailable to a rejected bidder, appellant showed it will suffer irreparable harm and has no adequate remedy at law. Regarding harm to third parties and public interest, the magistrate gave little weight to DAS's argument that a delay in implementation would threaten Scientific Games'

ability to execute on the contract. Although the magistrate expressed concern for potential harm to the public considering, in particular, the lack of a contingency plan and the "realistic risk" posed to a significant stream of revenue provided to public schools, the magistrate also noted a significant public interest in deterring state agencies from violating Ohio procurement law. (Mag.'s Decision at 34.) Ultimately, the magistrate found the potential harm to third parties to not outweigh the harm suffered by the public by the unlawful procurement of a public contract.

{¶ 19} The magistrate further concluded that appellant failed to prove it had a substantial likelihood of prevailing on the other grounds for the preliminary injunction: DAS abused its discretion by failing to negotiate price reductions with or request a best and final offer from appellant; DAS abused its discretion by awarding zero points to appellant for its MBE subcontracting plan; DAS abused its discretion by allowing irregularities in the scoring process; and DAS failed to document the basis of the cooperative services contract award. Regarding the failure to negotiate price reductions or request a best and final offer issue, the magistrate noted "DAS's abuse of discretion in refusing to consider [appellant's] cost proposal makes it impossible for the Magistrate to have an opinion on whether its proposal would've been reasonably susceptible of being selected for award or if [appellant] would've been a top-ranked offeror." (Mag.'s Decision at 27.)

{¶ 20} On April 5, 2017, DAS filed three objections to the magistrate's decision pursuant to Civ.R. 53(D)(3)(b): (1) the magistrate erred in concluding appellant proved by clear and convincing evidence that DAS abused its discretion by not considering appellant's costs proposal after appellant failed to achieve a 60 percent minimum technical score; (2) the magistrate incorrectly determined that appellant will suffer irreparable harm in absence of a preliminary injunction, despite appellant's failure to demonstrate this by clear and convincing evidence; and (3) the magistrate incorrectly determined that the public harm posed by the possibility of an unlawful procurement outweighs the harm posed to third parties and the public by a preliminary injunction. Appellant filed a memorandum contra on April 12, 2017.

{¶ 21} On April 20, 2017, DAS filed a "notice of opening of costs and suggestion of mootness" supported by the affidavit of Shaefer and a revised consensus score sheet.

(Apr. 20, 2017 Notice at 1.) In it, DAS stated that in response to the concerns expressed in the magistrate's decision, Shaefer and two procurement officers with DAS opened appellant's cost proposal and scored it in accordance with the criteria set forth in the RFP. Appellant's calculated cost score is 507.5, bringing its final total score to 1,052.5. Comparatively, Scientific Games' calculated cost score is 630, and its final total score is 1,537.5. Thus, Scientific Games' total final score exceeded appellant's score by 485 points. As a result, DAS asked the trial court to dissolve the temporary restraining order issued in the case on February 27, 2017 and the preliminary injunction order issued by the magistrate on March 22, 2017 "as the sole legal issue underlying the restraining order and injunction is now moot." (Apr. 20, 2017 Notice at 1.)

{¶ 22} Appellant responded to the notice on April 27, 2017, arguing DAS waived any argument regarding the scoring of appellant's cost proposal, appellant was prejudiced by the delay in opening its cost proposal, and that the opening is "irrelevant because it is still unknown what the final scoring would have been had DAS complied with the law and disclosed the 60% Rule in the RFP." (Apr. 27, 2017 Response at 2.) DAS filed a reply, which appellant moved to strike. A status conference was held on June 13, 2017. The next day, appellant filed a "supplemental submission" regarding the topics addressed at the status conference that argued against the preliminary injunction ordered by the magistrate now being moot. (June 14, 2017 Memo. at 1.)

{¶ 23} On June 15, 2017, the trial court issued a decision and entry sustaining DAS's objections to the magistrate's decision. The trial court found the application of the 60 percent rule on the part of DAS was improper since it was never stated in the RFP. Nevertheless, contrary to the magistrate's opinion, the trial court found the 60 percent rule is "not an evaluative rule, it is a gateway rule" that had no bearing on the scoring of the technical or MBE portions of the proposal. (Trial Ct. Decision & Entry at 6.) According to the trial court, the only harm to appellant from the application of the 60 percent rule is that appellant's cost proposal was not evaluated by DAS. The trial court noted Section 2.7 of the RFP places the responsibility of scoring the cost proposal on DAS (not the evaluation committee) and lays out a formula to be used in calculating the cost proposal points. Considering the above, because DAS evaluated the cost proposal, the comparative point totals were "not even close" and it "seems clear that even without the

60% rule, [appellant] was not going to get this contract," the trial court found that no controversy exists, appellant's case is moot, and appellant cannot show a substantial likelihood of success on the merits. (Trial Ct. Decision & Entry at 9.)

{¶ 24} The trial court additionally found there is no evidence to show that appellant would suffer irreparable injury if the injunction is not granted, since appellant "is not entitled to a perpetual contract with the Lottery" and, even without the 60 percent rule, the point totals show it is clear that appellant was not going to get the contract. (Trial Ct. Decision & Entry at 9.) Finally, the trial court thought requiring the two proposals to be evaluated again would be futile because it would not likely lead to significantly different scores for either appellant or Scientific Games.

{¶ 25} Therefore, the trial court did not adopt the magistrate's decision, dissolved the temporary restraining order and preliminary injunction, and dismissed appellant's entire complaint with prejudice due to being rendered moot.[2]

{¶ 26} Appellant filed a timely appeal to this court.[3]

## II. ASSIGNMENTS OF ERROR

{¶ 27} Appellant presents three assignments of error for our review:

> 1. The trial court erred in sustaining defendant Ohio Department Of Administrative Services' Objections to the Magistrate's March 22, 2017 Decision.
>
> 2. The trial court erred in overruling the Magistrate's March 22, 2017 Decision granting a preliminary injunction in favor of Intralot.
>
> 3. The trial court erred in dismissing Intralot's Complaint with prejudice.

## III.    STANDARD OF REVIEW

{¶ 28} "The issue whether to grant or deny an injunction is a matter solely within the discretion of the trial court and a reviewing court should not disturb the judgment of the trial court in the absence of a clear abuse of discretion." *Danis Clarkco Landfill Co. v. Clark Cty. Solid Waste Mgt. Dist.*, 73 Ohio St.3d 590, 604 (1995). *Escape Ents., Ltd.*

---

[2] With all claims dismissed with prejudice, the trial court marks its decision and entry as a final and appealable order.

[3] By entry dated June 30, 2017, this court granted appellant's motion for an injunction during the pendency of this appeal.

*v. Gosh Ents., Inc.*, 10th Dist. No. 04AP-834, 2005-Ohio-2637, ¶ 22. Likewise, absent an abuse of discretion, an appellate court will not overrule a trial court's review of a magistrate's decision. *Gilson v. Am. Inst. of Alternative Medicine*, 10th Dist. No. 15AP-548, 2016-Ohio-1324, ¶ 77. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 29} An appellate court generally considers questions of law de novo. *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, ¶ 34. The issue of mootness is a question of law reviewed de novo on appeal. *Tucker v. Leadership Academy for Math*, 10th Dist. No. 14AP-100, 2014-Ohio-3307, ¶ 7.

## IV. DISCUSSION

### A. First and Second Assignments of Error

{¶ 30} In its brief, appellant combines the arguments for the first and second assignments of error to essentially argue the merits in favor of granting a preliminary injunction in favor of appellant. We likewise address the first and second assignment of error together.

{¶ 31} In general, "the purpose of a preliminary injunction is to preserve a status between the parties pending a trial on the merits." *Proctor & Gamble Co. v. Stoneham*, 140 Ohio App.3d 260, 267 (1st Dist.2000). In *Youngstown City School Dist. Bd. of Edn. v. State*, 10th Dist. No. 15AP-941, 2017-Ohio-555, ¶ 50, this court recently set forth the test governing preliminary injunctions as follows:

> [I]n determining whether to grant a preliminary injunction, a court must consider four factors: "1) whether there is a substantial likelihood that plaintiff will prevail on the merits; 2) whether plaintiff will suffer irreparable injury if the injunction is not granted; 3) whether third parties will be unjustifiably harmed if the injunction is granted; and 4) whether the public interest will be served by the injunction." *Vanguard Transp. Sys., Inc. v. Edwards Transfer & Storage Co.*, 109 Ohio App.3d 786, 790, 673 N.E.2d 182 (10th Dist.1996), citing *Valco Cincinnati, Inc. v. N & D Machining Serv., Inc.*, 24 Ohio St.3d 41, 24 Ohio B. 83, 492 N.E.2d 814 (1986). A party seeking a preliminary injunction has the burden of establishing a right to the preliminary injunction by demonstrating clear and convincing evidence of each of these factors. *Hydrofarm,*

> *Inc., v. Orendorff*, 180 Ohio App.3d 339, 2008-Ohio-6819, 18, 905 N.E.2d 658 (10th Dist.), citing *Vanguard Transp. Sys., Inc.* at 790.  In determining whether to grant injunctive relief, no one of the four preliminary injunction factors is dispositive; rather, a balancing should be applied. *Escape Enters., Ltd., v. Gosh Enters., Inc.*, 10th Dist. No. 04AP-834, 2005-Ohio-2637, ¶ 48, quoting *Cleveland v. Cleveland Elec. Illum. Co.*, 115 Ohio App.3d 1, 14, 684 N.E.2d 343 (8th Dist.1996).

{¶ 32} "Courts should take particular caution * * * in granting injunctions, especially in cases affecting a public interest where the court is asked to interfere with or suspend the operation of important works or control the action of another department of government."  (Internal citations omitted.)  *Danis* at 604.  *Cedar Bay Constr. v. Fremont*, 50 Ohio St.3d 19, 21 (1990) ("Generally, courts in this state should be reluctant to substitute their judgment for that of city officials in determining which party is the 'lowest and best bidder.' ").

{¶ 33} Appellant contends that it has a substantial likelihood of prevailing on the merits of its claim for injunctive relief.  Specifically, appellant argues that the trial court misapplied Ohio law by finding the 60 percent rule was not an "evaluation criteria" that must be set forth in the RFP itself.  (Appellant's Brief at 10.)  Appellant cites to R.C. 125.071, which states in pertinent part:

> The request for proposals shall state the relative importance of price and other evaluation factors.
>
> * * *
>
> Award may be made to the offeror whose proposal is determined to be the most advantageous to this state, taking into consideration factors such as price and the evaluation criteria set forth in the request for proposals. The contract file shall contain the basis on which the award is made.

R.C. 125.071(B) and (E).  Appellant cites to the administrative code section governing the RFP process, which similarly states the RFP should include at minimum (among other items), "[t]he factors and criteria to be considered in evaluating proposals and the relative importance of each factor or criteria and a description of the evaluation procedures to be followed for award of a contract."  Ohio Adm.Code 125:5-1-08(A)(5).  Appellant

additionally argues that DAS's application of the 60 percent rule directly conflicts with Section 5.1.11.3 of the RFP itself, which provides that DAS may reject an offeror's proposal where "the Offeror received a significant number of zeros for sections in the technical portions of the evaluation."  (RFP at Section 5.1.11.3.)

{¶ 34} Furthermore, appellant contends that by not objecting to the magistrate's finding that it "is not possible to know what impact disclosure of the 60% rule in the RFP would have had on [appellant's] proposal or the scoring by the Evaluation Committee," it waived this argument, and the trial court should not have reconsidered this finding. (Appellant's Post-Hearing Brief at 6.)  Appellant also suggests there is no record evidence to support the trial court's conclusion disagreeing with the magistrate on this issue.

{¶ 35} Finally, appellant contends the trial court erred in concluding that appellant's claim for injunctive relief is moot based on DAS's belated opening of appellant's cost proposal.  Appellant argues mootness does not apply because DAS's use of the undisclosed 60 percent rule is a clear violation of Ohio law which renders the entire procurement invalid.  Appellant adds that DAS failed to follow the required procedure with respect to the cost proposal because it did not submit the cost proposals to the evaluation committee.  Appellant contends DAS prejudiced appellant and waived any argument regarding appellant's cost proposal by waiting to open appellant's cost proposal after the preliminary hearing.

{¶ 36} Conversely, DAS contends that appellant failed to prove, by clear and convincing evidence, two of the four elements required to grant a preliminary injunction. First, DAS argues that appellant failed to demonstrate a likelihood of success on the merits because appellant's sole meritorious argument was rendered moot when DAS scored appellant's cost proposal. Second, DAS argues appellant failed to demonstrate that it will suffer irreparable harm absent a preliminary injunction because the lack of money damages alone is insufficient to establish this element.  Lottery likewise contends that the trial court decision should be affirmed on the basis of mootness or, in the alternative, that the trial court did not abuse its discretion by not adopting the magistrate's decision.

{¶ 37} In general, courts will not decide issues that are moot.  *In re L.W.*, 168 Ohio App.3d 613, 2006-Ohio-644, ¶ 11 (10th Dist.).   An appellate court should not issue advisory opinions about preliminary injunctions involving moot questions.  *Mears v.*

*Zeppe's Franchise Dev.*, 8th Dist. No. 90312, 2009-Ohio-27, ¶ 24; *State ex rel. Brewer-Garrett Co. v. MetroHealth Sys.*, 8th Dist. No. 87365, 2006-Ohio-5244 (holding that once an issue addressed by preliminary injunction was complete, questions relating to preliminary injunction were moot and, thus, were not appropriate for appeal); *Paige v. Ohio High School Athletic Assn.*, 1st Dist. No. C-130024, 2013-Ohio-4713, ¶ 8 (holding portion of preliminary injunction permitting individual to participate in high school athletics to be moot where individual graduated from high school). A claim can become moot at any stage of litigation where there ceases to be an actual controversy between the parties. *Id.*

{¶ 38} Here, the magistrate found appellant demonstrated a substantial likelihood of success on one argument: DAS violated Ohio law by failing to disclose its 60 percent rule in the RFP and applying that rule to decline consideration of appellant's proposal. It is clear under Ohio law that a request for proposals issued pursuant to R.C. 125.071 must describe evaluation factors, criteria, and procedures to be followed for an award of a contract. R.C. 125.071(B) and (E); Ohio Adm.Code 125:5-1-08(A)(5). However, we disagree with appellant that DAS's use of the undisclosed 60 percent rule renders the entire procurement invalid in this case so as to retain a live controversy specific to the preliminary injunction.

{¶ 39} First, to the extent appellant is arguing DAS's undisclosed use of the 60 percent rule renders the entire solicitation invalid per se, without any showing of harm or prejudice, we do not find legal support for this position. Appellant has not cited legal authority, and our review of case law on similar issues persuades us that reversal is not always warranted in cases of improper procurement processes, particularly where no prejudice to the appellant can be shown. *Wheeling Corp. v. Columbus*, 147 Ohio App.3d 460, 491 (10th Dist.2001) (finding that procurement process was not invalid where the state agency deviated from the RFP provisions multiple times where the deviations were applied in an "even-handed and fair manner" and the appellant did not show prejudice).

{¶ 40} Second, appellant argues prejudice by emphasizing the magistrate stated, as a finding of fact, that it is not possible to know what impact disclosure of the 60 percent rule in the RFP would have had on appellant's proposal or the scoring by the evaluation

committee.  Appellant adds that because DAS failed to object to this finding, appellant waived any argument on this point.  This argument fails for several reasons.

{¶ 41}  Because appellant filed an objection directly related to the 60 percent rule, pursuant to Civ.R. 53(D)(4)(d), the trial court was permitted to undertake an independent review as to this objection, including determining whether the magistrate has properly determined the factual issues and appropriately applied the law.[4]  *See also Phelps v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 16AP-70, 2016-Ohio-5155, ¶ 9 ("Pursuant to Civ.R. 53, the trial court reviews a magistrate's decision de novo.").  Review of this finding of fact fits within the scope of the trial court's independent review of DAS's objection.

{¶ 42}  Furthermore, as provided in the facts, the issue of mootness arose after the magistrate's decision when DAS scored appellant's cost proposal.  Thus, this finding of fact by the magistrate—that it is not possible to know what impact disclosure of the 60 percent rule in the RFP would have had on appellant's proposal or the scoring by the evaluation committee—was raised as a point of contention by appellant in response to DAS's notice of mootness and thereafter became relevant to the trial court's analysis.  We find application of waiver inappropriate on these facts.

---

[4] In pertinent part, Civ.R. 53(D) states:

> [(3)(b)](iv) Waiver of right to assign adoption by court as error on appeal.  Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b).
>
> * * *
>
> [(4)](b) Action on magistrate's decision.  Whether or not objections are timely filed, a court may adopt or reject a magistrate's decision in whole or in part, with or without modification.  A court may hear a previously-referred matter, take additional evidence, or return a matter to a magistrate.
>
> (c) If no objections are filed. If no timely objections are filed, the court may adopt a magistrate's decision, unless it determines that there is an error of law or other defect evident on the face of the magistrate's decision.
>
> (d) Action on objections.  If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections.  In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law.  Before so ruling, the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate.

{¶ 43} Moreover, the trial court's position on this point—that "application of the 60% rule in no way affected or would have affected the scoring of the technical * * * aspects of the RFP"—is, at a minimum, supported by the language of the RFP, which sets forth a specific evaluation criteria for the technical component wholly unrelated to the 60 percent rule. (Trial Ct. Decision & Entry at 7-8.) On the evidence presented to support a preliminary injunction, this finding by the trial court does not rise to the level of an abuse of discretion. Considering all the above, we find appellant has not demonstrated that DAS's improper use of the undisclosed 60 percent rule renders the entire procurement invalid to warrant reversal in this case.

{¶ 44} Third, we disagree with appellant that DAS failed to follow the required procedure with respect to the cost proposal because it did not submit the cost proposals to the evaluation committee. Our review of Section 2.7 of the RFP shows that DAS was charged with determining points for the cost proposal component and that such award of points is calculated in accordance with a set formula. Based on its review of the evidence, the trial court concluded that DAS properly scored appellant's cost proposal. We find no abuse of discretion in this regard. Appellant has not demonstrated, at this point in the case, that when DAS scored appellant's cost component, it did not do so properly and in accordance with a set formula in the RFP. Moreover, appellant has not demonstrated it was prejudiced by the error to support reversal here even if the evaluation committee needed to be involved in the cost proposal scoring.

{¶ 45} Fourth, we disagree with appellant that DAS waived any argument regarding appellant's cost proposal by opening appellant's cost proposal after the preliminary hearing. Regarding waiver, appellant provides, and we find, no authority holding that a state body waives arguments, such as mootness, by correcting its own improper procurement procedure during the course of litigation. Encouraging parties to resolve conflicts outside of the courts is generally encouraged. *See Abm Farms v. Woods*, 81 Ohio St.3d 498, 500 (1998); Evid.R. 408, notes. Moreover, as previously noted, it is well-established that a claim may become moot at any time during the course of litigation. *Paige*.

{¶ 46} Fifth, regarding alleged prejudice to appellant resulting from the delayed opening of its cost proposal, even though appellant did not make arguments specific to

the delayed opening before the magistrate (since DAS had not yet opened appellant's cost proposal), appellant did file a response to DAS's notice of mootness, the trial court held a status conference on the issue, and appellant provided a memorandum to the trial court regarding issues of mootness prior to the trial court's decision.  Thus, appellant did have a chance to address the issues related to the delayed opening to the trial court, and we find no prejudice from appellant not being able to raise those issues to the magistrate. Regarding appellant's example related to the inability to negotiate price and present a best and final offer, we note the magistrate's comments regarding the lack of evidence of whether appellant had a realistic chance of being selected the top-ranked offeror (thereby triggering further price negotiations) is now resolved; appellant's score shows it had no realistic chance of being the top-ranked offeror to warrant further price negotiations. Overall, on the facts of this case, we find appellant's arguments related to DAS opening the cost proposal after the magistrate's decision to lack merit.

{¶ 47}  In this case, the original, complete proposals of both appellant and Scientific Games have now been scored with Scientific Games scoring significantly higher than appellant.  On the record developed for purposes of the preliminary injunction, appellant has not demonstrated that the trial court erred in concluding the sole basis for the preliminary injunction ordered by the magistrate is moot insofar as it involves a controversy that is no longer live.  As a result, the trial court did not abuse its discretion in finding appellant failed to demonstrate, by clear and convincing evidence, a substantial likelihood of success on the merits.  Because appellant did not prevail on one of the required elements to secure a preliminary injunction, we need not consider the remainder of the elements.  *Youngstown City School Dist.* at ¶ 50.

{¶ 48}  Therefore, we find the trial court did not err in sustaining DAS's objection to the magistrate's decision or in overruling the magistrate's decision to grant a preliminary injunction in favor of appellant.

{¶ 49}  Accordingly, the first and second assignments of error are overruled.

**B.  Third Assignment of Error**

{¶ 50}  In the third assignment of error, appellant contends the trial court erred in dismissing its entire complaint with prejudice.  Lottery contends the entire case is moot, and the trial court did not err in dismissing the complaint.  However, DAS agrees with

appellant that the trial court erred in this regard and also requests this court reverse the trial court's dismissal of the case. Specifically, according to DAS, "the [trial] court acted *incorrectly* in dismissing this case in its entirety [and] [d]ue to [appellant's] inability to prove each element for a preliminary injunction by clear and convincing evidence, this case should be remanded *without* reinstatement of the preliminary injunction." (Emphasis sic.) (DAS's Brief at 2, 16.)

{¶ 51} We note that "dismissal on the merits is a harsh remedy that calls for the due process guarantee of prior notice." *Ohio Furniture Co. v. Mindala*, 22 Ohio St.3d 99, 101 (1986). The only issue directly before the trial court in the procedural posture of this case was whether to adopt or reject the magistrate's decision granting preliminary injunction. No party asked the trial court to dismiss the entire action. Without notice, the trial court dismissed the entire complaint due to mootness. As indicated by DAS, appellant may have the right to further discovery to pursue the remainder of its case, and appellant makes clear that it has "been working to build its case for permanent injunctive relief and has been accumulating additional evidence" in the attempt to "demonstrate[] improprieties in the preparation for the procurement and the evaluation process." (June 14, 2017 Supp. Submission at 3.) Considering the above, we conclude that the trial court erred when it dismissed appellant's complaint in its entirety.

{¶ 52} Accordingly, we sustain appellant's third assignment of error.

## V. CONCLUSION

{¶ 53} Having overruled appellant's first and second assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas as to the preliminary injunction, and having sustained appellant's third assignment of error, we overrule the judgment of the Franklin County Court of Common Pleas as to dismissing the entire case with prejudice. We remand the matter for proceedings consistent with this opinion.

*Judgment affirmed in part, reversed in part*;
*cause remanded.*

KLATT and LUPER SCHUSTER, JJ., concur.

_____